## WILLIAM LINTNER

*v.*

## JAMES MILLIKIN.

1. PARTNERSHIP—*existence of—determined by the facts and intention of the parties.* The intention of the parties, together with the facts, must, as between themselves, be decisive of the question, whether a partnership did, or did not exist between them, and as to its extent.

2. CONTRACTS—*to be construed by courts alone—and not by witnesses.* The rule is well settled, that the construction of contracts, written or verbal, rests exclusively with the court, and they can not be expounded by witnesses.

3. PARTNERSHIP—*construction of a particular agreement—what will not constitute a partnership.* B & L, partners in the manufacture of certain agricultural implements, made a verbal agreement with M, a banker, whereby he agreed to

furnish them money from time to time, and sufficient to manufacture as many articles as they might think safe and profitable, M's advances, in any event, to be returned to him, and if the adventure proved profitable, he to have in addition, one third of the profits in lieu of interest on the money loaned. No time being fixed for the termination of the adventure, or provision made that M should bear any part of the expenses or losses; *Held*, that no partnership existed between B & L and M, in virtue of such agreement.

4. NEW TRIAL—*where substantial justice has been done.* Where substantial justice has been done, a judgment will not be reversed because of the admission of improper testimony.

WRIT OF ERROR to the Circuit Court of Macon county; the Hon. CHARLES EMERSON, Judge, presiding.

The opinion states the case.

Messrs. NELSON & ROBY, for the plaintiff in error.

Mr. A. J. GALLAGHER, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The decision of the principal question made on this record will dispose of all other questions made and discussed by the plaintiff in error. The question is, was there a partnership between these parties in the enterprise in which Barnes & Lintner were the active operators?

This is to be determined by the facts, and the intention of the parties at the time it was inaugurated.

The material facts are, that Barnes & Lintner were, in the fall of 1864, and had been for some time previous thereto, partners in the manufacture of pumps, at Decatur. At that time, they conceived the idea that money could be made by the manufacture of cultivators, and they determined, if they could find a person willing to advance the necessary capital for an interest in the profits, they would engage in the business. Millikin, being a banker in that city, with whom Barnes & Lintner

kept their bank account, was applied to by Barnes, and it being thought the enterprise would be a profitable speculation, and that the business might he done and the profits realized and closed up by the first of July, 1865, Millikin agreed to furnish the requisite funds for the manufacture of such number of machines as Barnes & Lintner might think safe and profitable to make; that Barnes & Lintner should take the management of the business, manufacture and sell the machines, and collect the proceeds, and return to Millikin his capital and a share of the profits, which were to be divided in the proportion of two thirds to Barnes & Lintner, and one third to Millikin.

The business did not result so fortunately as was anticipated, and Millikin's money was not returned to him by the first of July, 1865. In the fall of that year, Millikin, for the first time mentioned the subject of interest on his advances, and expressed his regret, and the inconvenience to which he was subjected, by the failure to refund, and requested them to hasten collections on the cultivator account. The original agreement made with him was, that he was to have the money invested by him " in any event," and one third of the profits, but no time was stipulated; so fast as the money was realized from the machines it was to be paid to Millikin until his investment was returned, and then he was to be paid out of the next proceeds of the business, one third of the profits. As no losses were anticipated by either of the parties, there was no understanding in regard to them, and nothing said about interest. Barnes & Lintner, in the winter of 1864–5, proceeded to manufacture the cultivators, Millikin supplying the money, until the amount reached five hundred, when Lintner wished to stop—but they went on and manufactured one thousand and two, when Lintner refused to be any further interested. The advances made by Millikin up to this time, after deducting all that had been paid in bank on this account, amounted

to eight thousand two hundred and ninety-one dollars and sixty-eight cents, exclusive of interest.

On the trial, Barnes was examined as a witness for the plaintiff, and so was the plaintiff himself, and they were severally asked by the plaintiff's counsel how they regarded Millikin in the transaction, whether as a partner or not. To asking this question and answering it, the defendant objected, but the court permitted it, and Barnes stated that he never had regarded Millikin as a partner, but had considered him in the light of a creditor of the firm of Barnes & Lintner, for his advances of money for the business. That Millikin was to have the amount of his advances paid back to him in any event. Millikin declared that he never regarded it as a partnership transaction, but considered it as a loan of money to Barnes & Lintner, which they were bound to pay back to him.

Lintner, on his examination as a witness on his own behalf, testified, without objection, that at an interview with Millikin about these affairs, he admitted he was to share one third of the losses, and Lintner told him, at that time, he had always regarded him as a partner, all which, Millikin, on being recalled, positively denied.

We believe the rule to be well settled, that the construction of contracts, written or verbal, is for the court, and cannot be expounded by witnesses. Their legal effect cannot rest in the opinions of witnesses. Parties may become partners without their knowing it, the relation resulting from the terms they have used in the contract, or from the nature of the undertaking. They may make a bargain together, without knowing it creates or involves a partnership, and subjects them to the law of partnership. This occurs most frequently when the agreement relates to a single transaction, or to one or two only. Pars. on Partn., 51, ch. 5.

We think the question and answer should not have been permitted.

Independent of these opinions, what do the naked facts show? Simply, a borrowing of money from a banker, for an indefinite time, he taking his chance for one third of the profits in lieu of interest on his money. Millikin had no interest in the machines manufactured, or in the notes taken from the purchasers on their sale. These all belonged to the firm of Barnes & Lintner. Nor had Millikin any lien upon them; he relied on the promise of the firm to repay him his advances as rapidly as money could be realized from the machines, and was to have them paid back to him in any event. This case differs from that of *Robbins* v. *Laswell*, 27 Ill., 375, which plaintiff in error cites as decisive of this. In that case, the agreement was in writing, under seal, and contained various stipulations, and fixed a term for the continuance of the agreement, and the bill was filed by Robbins for an account. It was not denied by Laswell that the agreement was a partnership, but that it was made to cover an usurious transaction. On the authority of the case of *Reid* v. *Hollinshead*, 4 Barn. and Cr., 10 Eng., C. L. Rep., 836, and *Dob et al.* v. *Halsey*, 16 Johns., 34, and 1. B. Monroe, 160, citing by mistake the case of *Ferguson* v. *Alcorn*, when it should have been cited as *Swan v. Hall*, parts of which cases were on the same page of the book, and Story on Partnership, that the contract made them partners *inter se.*

This case, we think, is distinguishable from that, in this and other respects. Here was an agreement on the part of the plaintiff, that he would furnish the money necessary to build as many cultivators as Barnes & Lintner might think safe and profitable to make, and that for the use of the money by Barnes & Lintner he would charge no interest, but be content with one-third of the profits on the adventure, and take his chances for such profits. No time was fixed when the adventure should terminate, but as the plaintiff supplied the money, it was clearly the intention of the parties, that he could refuse supplies whenever his judgment so dictated. And so could

the firm of Barnes & Lintner terminate it, whenever they should deem it inexpedient to manufacture cultivators. There was no other tie to bind them but their own individual interests, and which either party could sever at any moment.

The plaintiff does not seek to recover profits, but sues to get the money back he has advanced to the defendants. He disclaims the idea of a partnership, and we infer, from the nature of the transaction, that it was simply an arrangement by which Barnes & Lintner, then partners in business, could get money to carry out an enterprise of their own suggestion, and avoid paying any interest upon it by according to the lender a share of the profits. It was but a mode of getting compensation for the hire of money. Such arrangements are quite common, and owners of farms often agree with owners of labor to find all the capital, the other party agreeing to find all the labor, and to divide the profits equally, or in some other proportion, the farmer's capital, in any event, to be returned to him. They are not partners. Many other instances might be given; they are collated in Parsons on Partnership, 58 note (d).

It appears when Lintner was sworn as a witness, he testified that plaintiff admitted in a conversation he had with him, that he was a partner and liable for losses. The plaintiff, on being recalled, denied this, and sustained Barnes, and taking the testimony all together, we think it is proved that the question of loss was not discussed when the agreement was made, and for the reason that neither party anticipated a loss. It is is not probable, therefore, that the plaintiff could have made the admission, and so the judge who tried the cause thought.

Intention being to be ascertained from the acts and declarations of the parties themselves, and as two of the alleged partners disclaimed any partnership, and nothing in the transaction itself compelling the court to hold it a partnership, what acts were done by the parties to give the arrangement made the character of a partnership? We perceive none.

The plaintiff did nothing but furnish the funds when called on, and receive from the defendants such moneys as they, from time to time, were enabled to refund to him.

But, admitting there was a partnership in the outset, there was no time fixed for its duration. It was expected by the parties that the profits would be realized and the whole matter closed up by the first of July, 1865, but there was no understanding that the money advanced by the plaintiff should be refunded by that day. It appears that Barnes & Lintner, at the instigation of the plaintiff, but against the judgment of Lintner, who was content with the manufacture of five hundred machines, extended the amount to one thousand and two, and then ceased entirely the manufacture, he refusing to be further interested in it, to which no objection was made. Now, if there was a partnership up to July 1, 1865, after that time it was merely at will, for there is no implication or presumption from the acts and conduct of the parties that it was otherwise. This refusal of Lintner to continue the manufacture, was a virtual dissolution, (Story on Part. § 272, p. 409,) and being so, the right of the plaintiff to demand a return of his money, which was to be returned "in any event," and by an action at law, cannot be questioned—the rule that one partner cannot sue another at law except for a balance struck, and a promise to pay it, having no application. The reason of that rule has no existence here, because, in order to ascertain the amount to be refunded to the plaintiff, no examination of partnership accounts is necessary, nor any inquiry into profits and losses, nor into any matter growing out of a partnership concern. No losses can be set up against the plaintiff's claim, no investigation of accounts is involved, but the simple demand is, that the defendants shall pay back to the plaintiff the money they received from him, and which they promised to repay "in any event," exclusive of any interest thereon, his right to interest being extinguished in his agreement to receive one-third of the profits of the adventure. These were

the premium on his loans, and for that the court found a verdict, and we are not disposed to disturb it. The admission of the improper testimony, when, upon the whole record, it appears justice has been done, and to which the received testimony could not have contributed, is not sufficient, as this court has so often decided, to reverse a judgment.

For the reasons given, the judgment of the circuit court is affirmed.

*Judgment affirmed.*