ANTON FOUGNER *et al.*

*v.*

THE FIRST NATIONAL BANK OF CHICAGO *et al.*

*Filed at Ottawa March 24, 1892.*

1. PARTNERSHIP—*essentials—sharing profits and losses.* An agreement to share losses is not necessary in order to create one a partner in a business. The proper test is the sharing in the profits, but this test is subject to the qualification that it must be a sharing in the profits, as distinguished from merely making the profits the measure of compensation for services or for the use of property or money in the business; also, to the further qualification that there must not only be a sharing in the profits, but it must be done as a principal, and not merely as an employe, or as interest on a loan of money or for the use of property.

2. Even as to third persons a partnership is not constituted by the mere fact that two or more persons participate in or are interested in the net profits of a business. The existence of a partnership implies also the existence of such a relation between the persons as that each of them is a principal and each an agent for the other. The relation of one as partner with another depends upon the intention of the parties, as gathered from the language of their agreement.

3. A entered into a written agreement with C and D, then engaged in a business, which recited that A "agrees to enter into the business" then being carried on at a place named, and "to advance to said business $5000, to take general charge of the office, finances, books, correspondence, accounts, sales or other matters connected with the business." A was to receive as compensation for his services and the use of the money advanced, a salary of $25 a week, and such a proportion of the net profits as said sum of $5000 should bear to the then present net investment in the business, and neither of the three was to draw for private purposes more than $25 per week. The agreement was to last

one year, with the right of either of the parties to terminate the same at the end of the year, or at any time thereafter, by giving three months' notice, and on such termination A was to be repaid his said sum of $5000 and his share of the net profits: *Held,* that by such agreement A became a partner with C and D.

Appeal from the Appellate Court for the First District;— heard in that court on appeal from the County Court of Cook county; the Hon. Richard Prendergast, Judge, presiding.

On the 24th of May, 1889, Peter R. McLeod made a voluntary assignment for the benefit of creditors, naming Anton Fougner, one of the appellants, as assignee, who duly qualified. The First National Bank of Chicago presented to the assignee a claim for $20,818.26, of which $15,000 was evidenced by a promissory note made by said McLeod, payable to appellee Ferguson, and by him pledged to said bank after said assignment was made.    The bank, it is admitted, holds said note subject to all defenses which might be made against it in the hands of said Ferguson.    Appellee Ferguson also presented a claim for $3298.93.    To this claim, and so much of that of the bank as was evidenced by said promissory note, the appellants the American Tube and Iron Company and the Northwestern Iron and Metal Company, and other creditors of the assignor, objected.    The ground of the objection was, that the moneys for which the claims were filed were advanced by said Ferguson to McLeod as a partner in the business concerning which the assignment was made.    On a hearing in the county court of Cook county the objections were overruled and the claims duly allowed.    That judgment has been affirmed in the Appellate Court for the First District, and hence this appeal.

Mr. J. K. Wilson, for the appellant Anton Fougner:

The contract contains every necessary element of a partnership, and the language used is not limited by other words of the contract.    The language used not being ambiguous, is

to receive its ordinary meaning, and parties have no right to go outside of the contract and import a different construction. *Niehoff* v. *Dudley*, 40 Ill. 406.

An agreement to share the net profits implies a sharing of losses also. Story on Partnership, secs. 20, 21, 56; *Wilcox* v. *Dodge*, 12 Bradw. 517.

Parties may become partners without knowing it. *Lintner* v. *Millikin*, 47 Ill. 178.

One who is interested in the profits of the business as profits, and not simply as a means of compensation for services, is a partner as to third persons, and is liable as such for the debts. *Pooley* v. *Driver*, L. R. 5 Ch. Div. 458; *Rosenfield* v. *Haight*, 53 Wis. 260; *Leggett* v. *Hyde*, 58 N. Y. 272; *Wilcox* v. *Dodge*, 12 Bradw. 517.

If a partner in any sense of the word, he can not prove up his claim (nor can the bank on the $15,000 note,) against the estate in the hands of the assignee. *Strattan* v. *Tabb*, 8 Bradw. 225.

Messrs. WEIGLEY, BULKLEY & GRAY, for the appellants:

As to whether the agreement made Ferguson a partner, see Matthews on Partnership, p. 2, sec. 1, and p. 8, sec. 24, and secs. 14-17, *et seq.;* Parsons on Partnership, 58; Collyer on Partnership, sec. 18; 1 Lindley on Partnership, pp. 19, 24; Story on Partnership, sec. 15; *Robbins* v. *Laswell*, 27 Ill. 364; *Lockwood* v. *Doane*, 107 id. 239; *Wilcox* v. *Dodge*, 12 Bradw. 517; *Rosenfield* v. *Haight*, 53 Wis. 260.

Did the contract, together with the acts of the parties, their conduct and representations, make them partners as to third persons. Matthews on Partnership, p. 14, sec. 33; Story on Partnership, secs. 49, 54; *Fisher* v. *Bowles*, 20 Ill. 397; *Poole* v. *Fisher*, 62 id. 181; *Storey* v. *Storey*, 125 id. 613; *Hackett* v. *Stanley*, 115 N. Y. 625.

Messrs. GREGORY, BOOTH & HARLAN, for the appellee Ferguson:

The agreement does not constitute a partnership, and does not make Ferguson liable to the creditors of McLeod.   *Ross* v. *Parkyres,* L. R. 20 Eq. 331.

As to the question of sharing the profits, see *Smelting Co.* v. *Smith,* 13 R. I. 27; *Cox* v. *Hickman,* 8 H. L. 268; *Hart* v. *Kelly,* 83 Pa. St. 286; *Bullen* v. *Sharp,* L. R. 1 C. P. 86; *Bucher* v. *Bush,* 45 Mich. 189; *Blue* v. *Leathers,* 15 Ill. 31; *Parker* v. *Fergus,* 43 id. 437; *Adams* v. *Funk,* 53 id. 219; *Smith* v. *Knight,* 71 id. 148; *Lintner* v. *Millikin,* 47 id. 178; *Niehoff* v. *Dudley,* 40 id. 406; *Richardson* v. *Hughett,* 76 N. Y. 000; *Mollow* v. *March & Co.* L. R. 4 P. C. 419.


Mr. JUSTICE WILKIN delivered the opinion of the Court:

The only question presented by this record is, was appellee Ferguson a partner with McLeod in the business concerning which the assignment by the latter was made.   If he was, it is admitted he can not maintain a claim against the assigned estate, neither can said bank, which stands in his place.   The contention that they were partners is based, first, on the following agreement:

"*First*—Said Ferguson agrees to enter into the business now carried on at Nos. 345 and 347 South Canal street, in said city, by said McLeod and MacHugh, under the name of P. R. McLeod, to advance to said business, to be used therein, the sum of $5000, to take general charge of the office, finances, books, correspondence, accounts, sales or other matters connected with the business.

"*Second*—As compensation for his services and the use of the money so advanced by him he shall receive a salary at the rate of $25 a week, and such a proportion of the net profits of said business as said sum of $5000 shall bear to the total present net investment in said business.

"*Third*—In estimating said profits, the salary of said Ferguson, and like salaries to said McLeod and MacHugh, being $25 per week each, shall be deducted, with the other expenses of carrying on said business, from the gross proceeds thereof, and no moneys other than said sum of $25 per week shall be drawn by either of said parties for private purposes.

"*Fourth*—This agreement shall last for one year from the date hereof, with the right to either of said parties to terminate the same at the end of the year, or at any time thereafter, by giving three months' notice in writing of the desire so to end the same, such notice to be given by the party desiring to terminate the agreement to each of the others, and in case of such determination, said Ferguson shall be entitled to have repaid to him his said sum of $5000, and any further sums he may have advanced, and shall also receive his proper share of the net profits of the business at the time the agreement shall be so terminated."

This contract is dated March 10, 1888. It purports to have been entered into by said McLeod and Ferguson and one Charles A. MacHugh, but the latter's relation to said business is not involved in this proceeding.

It is admitted that the business mentioned in the first clause of this instrument is the same business in respect of which the assignment was made. Was the relationship of co-partners created by the contract, or did Ferguson by its terms become the creditor and employe of McLeod? This, it is admitted, is to be determined by the intention of the parties to be gathered from the instrument. It is generally said, that to constitute persons partners they must share in the profits and losses. It is, however, well settled that it is not now necessary to show that there is an agreement to bear losses in order to make one liable as a partner. Sharing in the profits is the test. That, however, is also subject to the qualification that it must be a sharing in the profits, as distinguished from merely making the profits the measure of

compensation for services, or for the use of property or money in the business.  The test of receiving profits is also subject to the further qualification that there must not only be a sharing in the profits, but it must be done as a principal, and not merely as an employe, or as interest on a loan of money or for the use of property.  This last qualification is founded on the case of *Cox* v. *Hickman,* 8 H. L. 268.

In *Holman* v. *Hammond,* L. R. 7 Exch. 218, it is said the import of the opinions delivered in the House of Lords, in that case, are correctly summarized by O'BRIEN, J., in *Shaw* v. *Galt,* I. R. 16 C. L. 375, thus : "The principle to be collected from them appears to be, that a partnership, even as to third parties, is not constituted by the mere fact of two or more persons participating in or being interested in the net profits of a business, but that the existence of such partnership implies also the existence of such a relation between such persons as that each of them is a principal and each an agent for the other."

Lord CRANWORTH, in his opinion in the case, (viz., of *Cox* v. *Hickman,*) uses this language : "It is often said that the test, or one of the tests, whether a person not ostensibly a partner is nevertheless in contemplation of law a partner, is whether he is entitled to participate in the profits.  This, no doubt, is in general a sufficiently accurate test, for a right to participate in profits affords cogent, often conclusive, evidence that the trade in which the profits have been made was carried on in part for or on behalf of the person setting up such a claim. But the real ground of the liability is, that the trade had been carried on by persons acting on his behalf.  When that is the case, he is liable on the trade obligations, and entitled to its profits or to a share of them.  It is not strictly correct to say that his right to share in the profits makes him liable to the debts of the trade.  The correct mode of stating the proposition is to say that the same thing which entitles him to the one makes him liable to the other, namely, the fact

9—141 ILL.

that the trade has been carried on in his behalf,—*i. e.*, that he stood in the relation of principal toward the persons acting ostensibly as the traders, by whom the liabilities have been incurred, and under whose management the profits have been made."

In the application of this rule many decisions are to be found by courts of last resort in this country, to the effect that, notwithstanding a party may contract to receive a part of the profits of a business, he can not be held liable as a partner. On.the other hand, many others, sometimes by the same courts, hold the contrary. These cases are all reconcilable on the distinction that in the first class of cases there was a mere hiring of services, property or money, to be paid for out of the profits of the business in which it was engaged, while in the latter there was a proprietary interest in the business. In other words, the distinction drawn by Judge O'BRIEN, *supra*, will, as a rule, sufficiently harmonize all the cases to which our attention has been called. Thus it was held by this court in *Smith* v. *Knight*, 71 Ill. 148, on the authority of former decisions, that there was no partnership created by a contract to receive a part of the profits of a business for the use of money advanced, for the purpose of enabling the firm to which it was furnished to carry on its business. But in that case, as well as those on which the decision is based, the advancement was a loan, and not a purchase of an interest in the business. Can this case be brought within that distinction? We think not. It seems to fall within the other class of decisions, in which it has.been held that a community of interest was created between the parties by the contract.

That which most clearly distinguishes this agreement from all those which have been held to create only the relation of employer and employe, debtor and creditor, or the mere hiring of property to be used in a· business, is that clause which provides that Ferguson is to have "general charge of the office, finances, books, correspondence, accounts, sales, *or other mat-*

*ters connected with the business."*   What more sweeping language could have been used to make him the manager of the entire business?   He is to have the *general* charge of certain specified branches of it, and then of *"other matters connected with the business."*   This is not, when read in connection with the other parts of the first clause of the instrument, a mere hiring of Ferguson by McLeod to become McLeod's general manager, but an agreement between the parties interested in the business that such shall be his duties.   We think it can hardly be seriously contended that McLeod, without taking some proper steps to extinguish Ferguson's interest in the business, could have taken the management of it out of his hands.   Certainly, in view of this clause, it can not be said that as to the $5000 McLeod was a mere borrower,—that Ferguson was his mere servant.   It seems rather that Ferguson still had the control and management of his own funds invested in the business, and also those of McLeod.

It is impossible to reconcile the language used in the first clause of this contract with the idea that Ferguson had no proprietary interest in the business.   It is true, as counsel for appellees say, the word "partner" or "partnership" is not used in the instrument, and it is also true, as said by counsel on the other side, that the word "loan," "employe" or "hire" is not to be found in it, and it is further true that it is not drawn in the usual form of a contract for a partnership; but we think no lawyer would read the first clause without expecting it to be followed by others relating to a partnership business.   The words "agrees to enter into the business," and "to advance to said business, to be used therein," are inconsistent with any other idea.   It is true, the first sentence in the second clause indicates a hiring, but we do not regard the words as of controlling influence to that effect.   In a sense, every partner who invests his money and agrees to give his time and attention to a partnership business, receives a part of the profits as a compensation for the use of his money and

services, and therefore the language here used is not wholly inconsistent with an intention on the part of Ferguson to take a proprietary interest in the business, as he says in the first clause he has agreed to do. Had the first clause been followed by the language, "he shall receive a salary," etc., the legal effect of the agreement would have been the same, and we think the insertion of the additional words does not indicate an intention on the part of Ferguson to become the mere creditor of McLeod or his employe. In other words, we are of the opinion that this instrument, as a whole, clearly indicates the intention, on the part of both Ferguson and McLeod, that each was to become a principal in the business, and each an agent for the other. They therefore became liable as partners. Such being the legal effect of the contract, it must be enforced accordingly, at least as to third parties.

While the intention of the parties is the criterion by which to determine whether or not a partnership has been formed, yet, as said by Justice Matthews in his work on Partnership, (page 12, sec. 31,) "it is very plain that parties can not, by agreement, enter into a partnership, and at the same time agree that what they have entered into shall not be a partnership." Or, in the language of BREESE, C. J., in *Lintner* v. *Millikin,* 47 Ill. 178: "Parties may become partners without their knowing it, the relation resulting from the terms they have used in the contract or from the nature of the undertaking. They may make a bargain together without knowing it, which creates or involves a partnership, and subjects them to the law of partnership."

We have not been unmindful of the rules of construction which, in cases of doubt, allow the court to consider such extraneous evidence as will enable it to place itself in the position of the parties when they executed the instrument to be construed, and which make it the duty of the court to give attention to that construction which the parties themselves have, by their conduct, placed upon it, both of which have

been insisted upon by the respective counsel as showing that the construction contended for by them is the true one. Conceding that the instrument under consideration is so doubtful in its terms as to call for the application of these rules, we see nothing in the record to indicate that our conclusion, reached from the instrument itself, is not perfectly consistent with the circumstances under which it was made, and the subsequent conduct of the parties.

We think the county court erred in overruling the objections to the claims of the appellees, and that the Appellate Court erred in affirming its judgment. The judgment of the latter court will therefore be reversed, and the cause will be remanded to the county court, with directions to proceed in conformity with this opinion.

*Judgment reversed.*