### Charles S. Leeds v. George P. Townsend.

1. PARTNERS—*Who Are, as Between Themselves—Intention Governs.*
—As between themselves, whether two or more persons associating themselves in business are partners, depends upon their intentions, and the question of such intention is to be gathered from the facts in the case.

2. SAME—*The General Rule and Exceptions to it.*—The general rule is, that to constitute persons partners they must share in the profits and losses. It is, however, well settled that it is not now necessary to show that there is an agreement to bear losses in order to make one liable as a partner. Sharing in the profits is the test. Such sharing must, however, be as a principal, and not merely as an employe, nor as a measure of compensation for services, nor for use of money or property in the business, nor as interest on a loan.

3. SAME—*Intention, How Ascertained in Case of an Oral Contract.*
—Where the agreement to form a partnership is not in writing, the intention of the parties must be ascertained from their words and conduct.

Bill for an Accounting.—Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the, Branch Appellate Court at the October term, 1899. Reversed and remanded. Opinion filed June 19, 1900.

Statement.—Appellee filed his bill in the Superior Court alleging that on or about November 15, 1894, he entered into a verbal partnership agreement with appellant for the promotion, construction, equipment and operation of an

electric surface railroad from the western limits of Chicago to Hinsdale and beyond.

Pursuant to this agreement, Leeds undertook to devote his time to financing and pushing forward the enterprise, Townsend to furnish his plans and data, and give such time as he could, outside of his other regular employment. In due time other parties were interested, franchises and right of way were procured, and in March, 1895, following, a charter for the railroad company was obtained, and the corporation was organized with a capital of $1,250,000. The bill states that Leeds, in accordance with the agreement, procured other parties to advance money, and as trustee, entered into a contract with the new company, in September, 1895, agreeing to build the line of railroad and appurtenances, taking in payment therefor the entire capital stock of the company and a quantity of bonds, the amount of which was to be agreed upon; that in April, 1896, Leeds organized a "Suburban Construction Company," under the laws of New Jersey, with a capital stock of $100,000, and received a large portion of the stock directly and an equal amount indirectly, and has received certain considerable amounts of money, both as salary and otherwise, all of which are assets of the copartnership; that Leeds refuses to account to Townsend for his equal share therein, and the latter prays for an accounting.

Leeds in answer sets up the statute of frauds, and denies a partnership agreement; but states that Townsend told him in the fall of 1894 that such an enterprise would be profitable, and that he, Townsend, would secure the necessary rights of way and franchises, if Leeds would agree to finance the enterprise; that without making any definite arrangement Leeds went to New York to see whether it could be financed, but found this impossible until rights of way were secured; that he requested Townsend to secure him these rights, but was informed that he was unable to give any time to the matter; that in conversation with Townsend, Leeds thereafter refused to go further with the enterprise until he knew what Townsend expected to receive,

and the latter said he did not expect nearly as much as Leeds ought to have, and would be satisfied with any small compensation that could be secured for him for any services he might have rendered to the enterprise. Leeds states that his entire time and energy, and money to about the sum of $3,500, were devoted to the enterprise; that Townsend did nothing; that March 16, 1896, he, Leeds, entered into a written contract with other parties interested in the enterprise, by which he was to receive money and stock for his services, and alleges that Townsend ought to be estopped from claiming a partnership interest, and that his remedy, if any, is adequate at law.

The bill was subsequently amended by inserting the words " or joint enterprise " wherever the word " partnership " appears.

The decree finds that the parties entered into an agreement, not a partnership, for a joint enterprise; Townsend to furnish his idea and data and such further assistance by way of data and advice as would not be inconsistent with his then employment on a salary with an electric company; that Leeds agreed to devote his time to interesting capital and to give such other services as were necessary to accomplish the promotion of the enterprise, and also agreed to personally pay his traveling and incidental expenses, it being understood that Townsend was not liable for any part thereof; that the enterprise was to be promoted in the usual manner by organizing a railroad and a construction company, and that all the stock received or earned by either party for services in promotion should constitute the profit and be equally divided, and that such agreement was in no wise changed. Townsend is awarded a half interest in a part of the stock held by Leeds.

From this decree Leeds prosecutes an appeal, and Townsend assigns cross-errors.

HENRY S. ROBBINS, attorney for appellant.

No pecuniary losses were to be shared by the appellee. Their agreement did not contemplate such losses, except

Leeds v. Townsend.

necessary traveling and incidental expenses. These appellant was to pay, and appellee was not to be personally liable for. Hence, there was no such sharing of losses as a partnership contemplates.

A long line of Illinois decisions clearly shows such an arrangement not to be a partnership, but merely a joint enterprise, and as such not justifying a resort to equity jurisdiction. Morton v. Gately, 1 Scam. 211; Blue v. Leathers, 15 Ill. 31; Smith v. Knight, 71 Ill. 148; Hurley v. Walton, 63 Ill. 260; Morton v. Nelson, 145 Ill. 591; Gottschalk v. Smith, 156 Ill. 378, 54 Ill. App. 341; Snell v. De-Land, 43 Ill. 323; Carter v. Carter, 28 Ill. App. 343.

Heckman, Elsdon & Shaw and Carnahan & Slusser, attorneys for appellee.

An agreement to share in the profits is the test as to whether or not a partnership exists. Fougner v. First Nat. Bank of Chicago, 141 Ill. 124; Illingworth v. Parker, 62 Ill. App. 650; State Nat. Bank of Springfield v. Butler, 149 Ill. 575; Griffen v. Cooper, 50 Ill. App. 257; Irvin v. N. C. & St. L. Ry. Co., 92 Ill. 103; Lindley on Partnership, star pages 19, 20, 21 and 22; Porley v. Driver, 5 Ch. D. 458.

A participation in profits affords, generally, conclusive evidence of a partnership. State Nat. Bank v. Butler, 149 Ill. 575.

Whether a partnership exists depends upon the intention of the parties, expressed by their acts and declarations where no contract in writing exists. Stevens v. Faucet, 24 Ill. 483. Fougner v. First Nat. Bank of Chicago, 141 Ill. 124 (128); Lindley on Partnership, star p. 19; Smith v. Knight, 71 Ill. 148; Natl. Surety Co. v. Townsend Brick Co., 176 Ill. 160; State Nat. Bank v. Butler, 149 Ill. 575 (*supra*).

Persons who agree to share the profits and losses, or the profits of one particular transaction or adventure, become partners as to such transaction or adventure. 1 Lindley on Partnership, star page 55; De Borkom v. Smith, 1 Esp. 29; Heyhoe v. Burge, 9 C. B. 431; Smith v. Watson, 2 B. & C. 401; In re Warren, Daveis, 320.

And even if no technical partnership existed, appellee may maintain a bill for an accounting against appellant.

Persons, although not technically partners, who are to receive a certain share of the profits of an undertaking, may likewise maintain an action for an accounting.    3 Pom. Eq. Juris. Sec. 1421, note 1, citing, among others:    Bentley v. Harris, 10 R. I. 434; Garr v. Redman, 6 Cal. 574; King v. Barnes, 109 N. Y. 267; Darrah v. Boyce, 62 Mich. 480; Shirley v. Goodnough, 15 Oregon, 642.

Mr. Justice Freeman delivered the opinion of the court.

It is contended by appellant Leeds that no case is made out for the exercise of equitable jurisdiction, first, because there was no partnership.

The Superior Court found that the original agreement between the parties did not constitute them copartners, but was an agreement only for a joint enterprise.    Upon this holding Townsend has assigned cross-errors.

The case was here before upon an appeal from an interlocutory order appointing a receiver.    In the opinion then filed (74 Ill. App. 444) it was said:

" The letters show very conclusively that there was such a joint interest as at the beginning of the undertaking and during its continuance while this correspondence was carried on, constituted the parties copartners."

It is now argued that it developed upon the hearing, as the decree found, that there was no partnership.    Counsel for Leeds urges that the agreement was for the promotion only of the construction of a railroad in the usual manner, by organizing a railroad corporation to own and operate the road, and a construction company to build it, for stock and bonds of the railroad company; that the only profits of the promotion were to be stock in the construction company to be divided equally between the two parties; that the agreement only contemplated a joint undertaking to secure the promotion or launching of the enterprise.

Townsend testifies that he had spent months investigating the subject of an electric road from the western limits of Chicago through Riverside and other towns to Hinsdale,

and ultimately to Aurora; that he had accumulated and prepared the data consisting of the estimates of cost of construction and profits, and being unable to give the necessary time himself, laid the project before Leeds, and proposed to take the latter into the enterprise and give him a half interest if he would devote all his time and obtain the preliminary funds. Townsend was to furnish prospectus and any data required, and devote such time as he could outside of his then regular employment, but was not to be openly connected with the project for business reasons. Townsend says that Leeds looked into the matter, accepted the proposal and started vigorously to interest capital. Each party states that the profits were expected to be derived from the stock and bonds of the enterprise, and Townsend says:

"We agreed that whatever came to us in any way as a result of the promotion, we would share equally. The profits would be made through the construction company, which would obtain the contract for building the road for all the stock and bonds. We expected to control the construction company."

Appellant was to find parties willing to put up the money in return for an interest in the scheme. He was not to borrow it himself, but was to pay his own expenses while endeavoring to interest capital in the enterprise.

A careful reading of the correspondence between the parties shows, we think, an understanding on their part during the period covered by it, that is, from January 8, 1894, to May 17, 1895, that they were partners in the project. Leeds writes Townsend January 8th, expressing a "doubt if we can keep the interest we want." "As this is your idea I hardly feel at liberty to depart from the lines laid down for the distribution of profit without your consent." Again he writes: "We are working for ourselves;" " I wish you were here to post me on electrical points as they come up." He writes of " the large interest you were to have; " of a possible " big change in the distribution of profits leaving us a small share; " and asks, "will you be satisfied with $25,000 each, stock and bonds, for your idea?"

" This enterprise is going through.   Our personal interest
is shaky."   The whole tenor of the correspondence indi-
cates that the men were engaged together in an enterprise
of common and apparently equal interest.

Leeds' testimony is that Townsend's particular part of
the enterprise was to obtain the franchises, and each was
to have a proportion of the profits; but that " nothing was
fixed as to what the proportion was to be."   The presump-
tion, therefore, will be that they were to share equally, in
the absence of evidence to the contrary.   Leeds also testi-
fies that he and Townsend were to become stockholders in
the construction company.   Indeed, there is not any material
controversy as to what the original arrangement was.

It is urged by counsel for appellant that the agreement
did not constitute a partnership because no provision was
made that pecuniary losses were to be shared.   It seems to
be true that the agreement did not contemplate losses, except
possible loss of time and labor given to the project by both
parties, and of the traveling and incidental expenses of
appellant which he was to advance as his contribution to
the capital of the concern, to offset appellee's ideas and data.
There were apparently no other partnership risks, but there
were contingent profits in contemplation, in which it was
agreed to share, and this amounts *prima facie* to an agree-
ment to share losses.   Lindley on Part. p. 12.   As between
themselves, whether two or more persons associating in
business are partners, depends upon their intentions.   Lind-
ley on Partnership, p. 10, *et seq.*   In Nat. Surety Co. v.
Townsend Brick Co., 176 Ill. 156 (161), where an agree-
ment was made to share one half the profits and losses, yet
where the parties did not intend a partnership, it was held
that as between the parties, the question of a partnership
is one of intention to be gathered from the facts.   In Foug-
ner v. First Nat. Bank, 141 Ill. 124 (128), where the ques-
tion is discussed, the court says:

" It is generally said that to constitute persons partners
they must share in the profits and losses.   It is, however,
well settled that it is not now necessary to show that there

is an agreement to bear losses in order to make one liable as a partner.   Sharing in the profits is the test."

Such sharing must, however, be as a principal and not merely as employe, nor as a measure of compensation for services, nor for use of money or property in the business, nor as interest on a loan.   If the agreement is not in writing, the intention of the parties must be ascertained from their words and conduct.   Lindley on Part, p. 10;   State Nat. Bank v. Butler, 149 Ill. 575 (582).

It is urged, and the decree finds, that the transaction in this case was only a joint venture covering one transaction instead of a partnership.   While it is true that the purpose was to attain a definite object—the construction and operation of the railroad, yet it did involve more than a single transaction.   It required a plan of operations, data showing probable cost and probabilities of profitable operation, obtaining charters, franchises, right of way, interesting capitalists, the receipt and expenditure of considerable money—all this and more, before the anticipated profits could be realized.   The profits were wholly contingent, depending upon the nature of the arrangement with others. The project was not a single enterprise, as where two parties agreed to divide the sum realized from the sale of a piece of real estate, over and above the owner's price, or where the owner of a farm agreed with another, that the owner should furnish the farm and the other party the labor, the crop to be divided in a definite proportion.   (See Blue v. Leathers, 15 Ill. 31; Gottschalk v. Smith, 156 Ill. 378.)   It involved a series of transactions extending over a considerable period of time.

It follows from the conclusion that a partnership existed, that a court of equity has jurisdiction of the controversy and we need not inquire as to the existence of other grounds therefor.

It is urged, however, that whatever the original understanding and agreement of the parties may have been, it was subsequently changed, and the court erred in not so finding.   We do not regard the evidence to this effect as

sufficient to justify such conclusion. There is testimony tending to show that it was agreed upon between the parties for reasons satisfactory to both, and apparently as part of the plan, that Townsend should not be known in the enterprise, but pose as a disinterested expert adviser. If there was impropriety in this, Leeds can not complain, and is entitled to no advantage thereby. It is certainly not proven in view of his express denial, that Townsend agreed to give up his partnership interest and accept such small compensation as Leeds might choose to bestow.

It remains to consider the scope of the partnership. Leeds' counsel insists that it included only the "promotion" of the enterprise, and that "promotion generally ends before construction begins." Townsend states that the plan as proposed by him and accepted by Leeds was to build an electric road from the western limits of Chicago, etc., and Leeds also says that Townsend "had a scheme to build a road from Chicago to Hinsdale." Townsend says:

" We did not contemplate the construction of the railroad, but only the formation of the construction company, and making of a contract for the construction of the road to be paid in all the railroad company's stock and bonds," and that "Whatever we made in the enterprise or as a result thereof, was to be divided evenly."

Leeds testifies:

" We were to have an interest in the profits; as to the amounts nothing was said. We were to interest people in the construction company, which should build the road. We were to get the profits in stocks and bonds of the railroad company."

And he says again:

" The profits of the enterprise were to consist of stocks and bonds of the railroad company through the construction company."

They expected, therefore, to make their profits out of such part of the stocks and bonds of the railroad and construction companies issued to raise money for the enterprise as they might be able to retain, after satisfying the demands of those from whom they hoped to obtain the

necessary capital. But a construction company would be useless which did not construct; and stock and bonds would be valueless in a railroad which was not built and operated. The scope of the agreement must be considered as including whatever was necessary to put the enterprise on its feet so as to give its stock and bonds a value. The evidence fairly sustains the conclusion, in our judgment, that the scope of the partnership was not limited by the agreement to the "promotion" only, of the construction company; that the character of the profits as well as the amount, were to be determined by developments; and that whatever their nature or amount, they were to be equally shared.

It follows from these conclusions that whatever was received by either party over and above his actual outlay for expenses incurred by and for the copartnership, was partnership assets and to be divided equally. This must include the five thousand dollars received by Leeds for his services, as he says, prior to November. It is doubtless true that he received less stock than he would otherwise have had, because of the payment of this five thousand dollars. If paid in stock instead of cash it would have been, under the agreement, partnership stock. It is no less partnership property because paid in money. Taking his own view of it, Leeds received this money for services in promoting the enterprise—just what he says he undertook to do. The railroad company had been incorporated, and he had obtained a contract from it for the construction of the road. He had borrowed money from Stump on the security of that contract. The contract he subsequently assigned to the construction company, receiving in return the stock in controversy. We can not avoid the conclusion that whatever Leeds so received as so-called salary was partnership property, and must be accounted for.

The salary received after the formation of the construction company for services as president stands on a different basis. The company had a right to employ him, and he was entitled to be paid for services, without accounting therefor to Townsend.

The same is true, also, as to what salary he received or was allowed when the contract was turned over to the construction company, for his services rendered as trustee in the work of actual construction. This was in reality not different from the salary paid him by the construction company. It was earned in the same way, and was likewise paid by the company. It was not partnership property.

We have examined the testimony carefully with reference to what is spoken of as the "Starr stock," now in possession of Leeds and held in his wife's name. It is not clear that Starr was not acting as Leeds' representative in that transaction, nor that the money which is said to have been paid by Leeds for the stock in question did not come through the construction company in such a way as to constitute partnership assets. There were five thousand five hundred dollars paid to Leeds through Naugle, Holcomb & Co., which it is claimed was a repayment of money advanced by him. With this it is said Leeds repaid a loan he had made in Indiana of the money with which he bought the Starr stock. But it is also said to have been part of the money referred to in the so-called "quadruplicate agreement" as money due Starr. "There is no evidence," says Leeds' counsel, "to show where appellant got this money loaned to the enterprise." Nor does it appear satisfactorily how or when or for what purpose or by whom it was so loaned, if at all. Appellee is entitled to an accounting as to this stock, and if it shall appear to be partnership assets, it must be so treated.

For the reasons indicated the decree of the Superior Court will be reversed and the cause remanded to that court for further proceedings not inconsistent with this opinion. Reversed and remanded.