**W. F. Bleck & Company, Appellant, v. Gustave H. Soeffing and Fred Meyer, Defendants.    Gustave H. Soeffing, Appellee.**

**Gen. No. 30,517.**

1. PARTNERSHIP—*agreement of contractor to erect houses upon lots of another, in consideration of a share of the profits from the sale of the lots when improved, as one of partnership.* Where under a written agreement between a contractor and an owner of lots the contractor undertook to build houses upon such lots, with money furnished by the lot owner, it was provided that the compensation of the contractor for so doing would be a stipulated sum for the sale of each house, payable as and when each was sold, plus one-half of the net proceeds received from the sale of all of the lots, payable after all were sold and the net proceeds ascertained, and further provided that the contract was not one of partnership, that the contractor was to have no interest or title in any of the lots or the improvements placed thereon, and that neither party had authority to bind the other or to pledge his credit without express written consent in each case, held that no partnership relation was intended or created by the parties.

2. PARTNERSHIP—*sufficiency of evidence to establish partnership relation between owner of lots and contractor erecting houses thereon, as to third person furnishing building material.* Evidence in an action to recover the value of materials furnished a contractor, which were used by him in the erection of houses upon lots owned by another pursuant to a contract between such contractor and the lot owner, held not to show any representation by such owner that he was a partner of the contractor in the erection of such houses or the purchase of material for such pur-

pose, or that credit was extended to such contractor upon the faith of such supposed partnership relation.

3. PARTNERSHIP—*sufficiency of prima facie showing of partnership between owner of lots and contractor erecting houses thereon in consideration of share of net proceeds of enterprise.* Notwithstanding Cahill's St. ch. 106a, ¶ 7, providing that the receipt by a person of a share of the profits of a business shall be prima facie evidence that he is a partner in such business, a partnership is not prima facie established by proof of an agreement between a contractor and an owner of lots wherein the contractor undertook to erect houses upon such lots, with money furnished by the owner, the contract providing that the compensation of the contractor for so doing should be a stipulated sum for the sale of each house, payable as each was sold, plus one-half of the net proceeds received from the sale of all of the lots, payable after all were sold and the net proceeds ascertained, but further providing that the contractor was to have no interest or title in any of the lots or the improvements placed thereon, that the contract was not one of partnership and that neither party had authority to bind the other or to pledge his credit without express authority in each case.

4. PARTNERSHIP—*admissibility of testimony as to statements by member of alleged partnership touching existence of relation made in absence of party sought to be charged as partner.* In an action against a contractor and an owner of lots to recover the value of building material furnished upon the order of the contractor and used by him in erecting houses upon the lots of such owner pursuant to a contract between them, it was not error to exclude testimony of a conversation between the contractor and plaintiff occurring in the absence of the lot owner and prior to the delivery of such material, touching the existence of an alleged partnership between the contractor and the lot owner in the business of erecting and selling such houses, the existence of such partnership not having been alleged in the statement of claim and there being no other evidence prima facie establishing it.

Appeal by plaintiff from the Municipal Court of Chicago; the Hon. PHILIP J. FINNEGAN, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed May 25, 1926.

HERBERT A. SCHRYVER, for appellant.

CLITHERO, VAN SCHAICK & STEVENS, for appellee; GUY VAN SCHAICK, of counsel.

Mr. Justice Fitch delivered the opinion of the court.

This is an appeal from a judgment in favor of the defendant Gustave H. Soeffing entered upon a directed verdict at the close of the plaintiff's evidence.

Plaintiff's evidence tends to prove the following facts: The defendant Soeffing owned a block of 40 vacant lots in Oak Park for which he had paid $20,000 in cash and had given his purchase money mortgage on 30 of the lots for $28,000, the remainder of the purchase price. Fred Meyer was an experienced builder of houses. On March 28, 1922, Soeffing and Meyer entered into a written agreement providing, in substance, that Meyer should at once begin the construction of a building on each of the ten unincumbered lots in Soeffing's block, should furnish "all of the equipment or machinery necessary" therefor, and should "give his entire time and attention to the prosecution of said work"; that Soeffing should "furnish such money, from time to time, as may be necessary," not exceeding $10,000, which should be deposited in a specified bank and "paid out, from time to time, upon orders for work and material," as designated by Meyer, who should countersign all checks, but "in the event of his death, his counter-signature shall not be necessary" to enable Soeffing "to withdraw any money so deposited in said account"; that as each building was erected, a building loan thereon of not over $7,000 should be obtained by Meyer, running five years at six per cent interest, and that if Soeffing did not desire to execute the notes and trust deed for such loan, he should convey the title to some suitable person who would execute the same so as to make the building loan a first lien; that Meyer should have the exclusive sale of the buildings when completed, at prices and terms to be mutually agreed upon, and should be allowed $300 for the sale of each two-flat building and $200 for the sale of each bungalow "when and as sold," provided that if any building remained unsold for two months after

its completion, Soeffing might then sell the same "for such price and terms as he may elect"; that upon all sales the cash payments should be at once deposited "in said bank in said account," to the credit of Soeffing, and all second mortgage notes and securities received should be at once delivered to Soeffing "to be held by him for the uses and purposes as hereinafter expressed"; that when the first ten buildings "shall have been completed and sufficient cash realized from the sales thereof," Soeffing "shall make a payment on the aforesaid purchase money mortgage and procure the release of ten additional lots under the terms thereof," which should then be improved and sold in like manner, and so on until the Soeffing mortgage was fully paid and all the 40 lots had been improved; that "whenever and as soon as the cash funds are sufficient for the purpose," Soeffing might "withdraw therefrom and pay to himself all moneys due to him for cash advances," including the amounts he had paid for the purchase of the land, interest paid by him on the purchase money mortgage, and all taxes, insurance and other expenses advanced by him, "and thereafter the net proceeds of the enterprise shall be divided equally between the parties hereto"; that if Meyer should die before all such advances were repaid, "his death shall *ipso facto* terminate any claim or demand of any kind or character which he had, or which his personal representative, heirs or assigns might or could have hereunder"; but if Meyer should die after enough money had been realized to repay all of Soeffing's advances, then the latter should complete the construction of any building that was then in course of construction "above the first floor joists" and sell the same, and when all were sold and Soeffing's advances had been fully repaid to him and all taxes, insurance, interest and "all other necessary expenses" were paid, "the net proceeds shall be divided" between him and the legal representative of Meyer.

Sections 12 and 13 of the contract are as follows:

"12. It is mutually covenanted and agreed that under and by the terms of this contract it is intended only to give to the party of the second part an interest in the net proceeds to be derived from the enterprise, as hereinabove provided, and that the party of the second part has no right, title or interest in or to the said lots, or any or either of them, or the buildings and improvements which may be erected upon them, or any of them, and that any claim or pretense that second party has any such interest in or to said lots, or any or either of them, or any buildings or improvements erected or to be erected thereon, made by him or by anyone for him, or the recording by him, or the procuring to be recorded by him, or by anyone for him, or claiming to represent him, of this contract or any purported copy thereof, shall forthwith render this contract null and void and operate to relinquish all claims and demands of every kind or character whatsoever which the said party of the second part, his heirs, executors, administrators or assigns can or may have hereunder, for or on account of any matter or thing whatsoever.

"13. It is expressly agreed that this is not a contract of partnership and that neither party hereto has any power or authority to bind the other or pledge his credit without in each case the written consent of the other party hereto."

Upon the signing of this agreement, Soeffing deposited $10,000 in the stipulated bank. At the time of such deposit, Meyer was present and told Soeffing he wanted the account made in the name of Fred Meyer & Company, "to distinguish it from his real estate business," and Soeffing agreed to this. Both then signed a statement with the bank requiring the signatures of both to all checks, and thereafter all checks drawn on that account were signed by both Soeffing and Meyer.

Plaintiff is a manufacturer of millwork, and furnished materials for buildings erected by Meyer on Soeffing's land. The total price of the material so furnished was "in the neighborhood of $39,000 or $40,000," all of which, except $4,522.84, was paid to plaintiff by checks signed as above stated. Plaintiff sued both Soeffing and Meyer for this balance.

The statement of claim alleges, in part, that "defendants, jointly and severally, ordered from the plaintiff the sash and millwork for a large number of houses then being constructed upon the lots of said Gustave H. Soeffing by said Fred Meyer, doing business as Fred Meyer & Co." Meyer filed no affidavit of merits and for want of such affidavit a default and judgment were entered against him, and it was then "ordered that cause proceed as to defendant, Gustave H. Soeffing." Soeffing's affidavit of merits states that he did not at any time, either individually or jointly with Meyer, order any materials from the plaintiff, and that he never had any dealing with plaintiff at any time.

The first question presented is whether the court erred in directing a verdict. That depends on whether there is any evidence fairly tending to support plaintiff's claim that Soeffing and Meyer were jointly and severally liable to plaintiff, as partners, for the millwork plaintiff delivered to Meyer.

Section 6 of the Uniform Partnership Act [Cahill's St. ch. 106a, ¶ 6] defines a partnership as "an association of two or more persons to carry on *as co-owners* a business for profit." Section 7 [Cahill's St. ch. 106a, ¶ 7] of the same act provides that "in determining whether a partnership exists, these rules shall apply: (1) *Except as provided by section 16,* persons who are not partners as to each other are not partners as to third persons." Section 16 [Cahill's St. ch. 106a, ¶ 16] thus referred to provides: "When a person, by words spoken or written or by conduct, represents him-

self, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership.''

Applying these principles to the facts enumerated above, we are of the opinion that the evidence fails to show any partnership relation between Soeffing and Meyer. By the terms of the written contract signed by both, it was expressly declared that no partnership was intended. It was, in terms, ''expressly agreed that this is not a contract of partnership'' and that neither party has any authority to bind the other, *or pledge his credit, "without in each case the written consent of the other party."* No written consent of Soeffing to any pledge of credit to plaintiff was shown or claimed. As between themselves, therefore, it seems clear that no partnership relation was intended or created. Their declared intention was that Meyer should build houses on Soeffing's land, with money furnished by Soeffing, and that his compensation for so doing should be a stipulated sum for each sale, payable ''when and as sold,'' plus one-half of the net proceeds received from the sale of all the lots, payable when all the lots were sold and the amount of such net proceeds ascertained. As to third persons, there is no evidence whatever tending to prove that Soeffing ever represented to plaintiff or anyone else, orally or in writing, that he was a partner of Meyer's, nor is there any evidence of any conduct from which such a representation might be reasonably inferred, nor any evidence that plaintiff gave credit to any such partnership, ''on the faith of'' any such representations or conduct, or otherwise. The statement of account which was filed as part of plaintiff's statement of claim shows that the credit was given to ''Fred Meyer & Company,'' which, the

statement alleges, was the name under which *Fred Meyer* was doing business. Hence section 16 of the Uniform Partnership Act [Cahill's St. ch. 106a, ¶ 16] does not apply.

It is urged that the provision of the contract which states that the "net proceeds" shall be divided is sufficient prima facie to show that a partnership existed. Section 7 of the Uniform Partnership Act [Cahill's St. ch. 106a, ¶ 7] states that the sharing of profits is prima facie evidence of partnership, but that "no such inference shall be drawn if such profits were received * * * as wages of an employee," or "as interest on a loan." In *Goacher v. Bates,* 280 Ill. 372, 375, the court said:

"In *Fougner v. First Nat. Bank of Chicago,* 141 Ill. 124, it was held that while sharing in profits is one test as to whether a partnership exists, that test is subject to the qualification that it must be a sharing in the profits *as distinguished from making the profits the measure of compensation for services* or for the use of property or money in the business."

In the present case, the contract between the defendants shows that the division of the net proceeds provided for therein was intended merely as the measure of compensation agreed upon for the services of Meyer in building Soeffing's houses. Meyer had no title or interest in the houses, as such, but only an interest in the net proceeds of the sales, after all authorized claims were paid. In *Fougner v. First Nat. Bank of Chicago, supra,* the court quotes with approval the following language from an English case which, after reviewing the authorities on this subject, said:

"The principle to be collected from them appears to be that a partnership, even as to third parties, is not constituted by the mere fact of two or more persons participating in or being interested in the net profits of a business, but that *the existence of such partnership implies also the existence of such a relation be-*

*tween such persons as that each of them is a principal and each an agent for the other.''*

There is nothing in the evidence in this case tending to prove the existence of such a relation between Soeffing and Meyer. Even if it might be inferred, contrary to the express terms of the contract, that Meyer was the agent of Soeffing in the business of erecting the houses on his property and in making sales of the same, there is certainly nothing in the evidence from which it could possibly be inferred that Soeffing was in any sense or for any purpose an agent of Meyer. The reciprocal relation necessary to constitute a partnership was entirely absent. *Parker v. Fergus,* 43 Ill. 437; *National Surety Co. v. T. B. Townsend Brick & Contracting Co.,* 176 Ill. 156, 160.

It is also urged that the court erred ''in refusing to allow Mr. Bleck to testify as to conversations that he had with Mr. Meyer.'' Apparently the purpose of the questions asked of Mr. Bleck by his counsel, to which the court sustained objections, was to show that Meyer said something to Bleck in the absence of Soeffing indicating that he (Meyer) was a partner of Soeffing, and it is argued that this evidence was admissible because plaintiff ''had made out a prima facie case of copartnership.'' This contention is disposed of, we think, by what has already been said. We think there was no error in the ruling.

The judgment is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.