CHIEF JUSTICE PRYOR
delivered the opinion of the court.
Anderson, Hamilton & Co., a firm engaged in the business of pork-packing, etc., and Swearingen & Biggs, engaged as distillers and sellers of whisky, entered into an agreement by which the two firms were to pack pork on joint account during the winter of 1875-6. Large sums of money were raised upon the paper of the two firms, as stipulated in their contract; and in May, 1876, the firm of Anderson, Hamilton & Co. becoming insolvent, they delivered over to Swearingen & Biggs the product of their joint adventure, to enable the latter to pay off its liabilities. In the settlement and distribution of the assets of Anderson, Hamilton & Co. the creditors of that firm, whose debts were created long prior to the undertaking of this joint adventure between the two firms, claim that Swearingen & Biggs have no lien on the product or proceeds of the joint enterprise to pay its debts.
The facts contained in this record will not authorize the application of the equitable rule contended for by counsel for the appellants in marshaling the assets in this case. That there was a partnership or joint adventure between the two firms of Anderson, Hamilton & Co. and Swearingen & Biggs in the purchase of hogs for the season of 1875-6, is well established; and, whether regarded as a partnership or on joint account, the same equities exist between the parties.
The latter firm was not, in fact, a partner with Anderson, Hamilton & Co. in the sense or to the extent claimed by counsel. Anderson, Hamilton & Co. had been pork-packers for *655 years, and, from the facts of this ease, were doing an extensive business with which Swearingen & Biggs had no connection or interest whatever, and by becoming interested in the purchase and packing of hogs for a particular season did not thereby become full partners in the entire business of the firm of Anderson, Hamilton & Co., and certainly not responsible for their antecedent liabilities, not one dollar of which was created on the credit of Swearingen & Biggs, or for the product of hogs that were purchased and owned on joint account. That there was a partnership, in regard to buying hogs for the season, is evident, as every element constituting a partnership is to be found in the contract between the parties. Each one advanced certain moneys, and the balance required to be raised for the purposes contemplated was borrowed on joint account by the execution of the paper of the two firms, one indorsing or becoming an acceptor for the other. With this fund the hogs were to be purchased and packed, Anderson, Hamilton & Co. to have complete control of the product, and the losses or profits to be divided between the two firms. This, made them partners in that adventure; and that Swearingen, & Biggs were known as such is evidenced by an abundance of proof in the record showing that Anderson, Hamilton & Co. obtained money on their own paper, upon the idea that Swearingen & Biggs were bound, and that the money was to be applied to purchasing hogs on joint account. There was no concealment of their joint interest with the Hamiltons in this pork adventure, and Swearingen himself was engaged in buying hogs for the firm.
That Anderson, Hamilton & Co. were to have complete control of the sale of the product did not affect the terms of the partnership or deprive Swearingen & Biggs of their interests as partners, or of their right to have the product of the hogs applied to the payment of the partnership debts. Anderson, Hamilton & Co. being alone authorized to sell, a sale by *656 them would have passed to the purchaser a perfect title, and a borrowing by them for the use of the firm might have been within the scope of their authority, when affecting the rights of others, although'prohibited from doing so by the express terms of the agreement; still they were not empowered expressly or by implication to bind Swearingen & Biggs for the antecedent debts of the firm of Anderson, Hamilton & Co., and could not have created such an obligation upon them, if they had become full partners in the entire business of Anderson, Hamilton & Co., without express authority given.
The law will not impose a liability in such a case on the incoming partner, without an express undertaking to that effect, much less upon one whose partnership or interest is limited to a single adventure. The firm of Swearingen & Biggs was neither a silent or dormant partner under the proof. They were known to be partners, and credit given to Anderson, Hamilton & Co. on that account; and not only so, they were engaged, as well as Hamilton, in the purchase of hogs. That a partnership may exist as to third persons, and not between those conducting the business, is well settled, and the cases referred to by counsel sustain this proposition, but the facts of those cases are unlike the facts of this case. In thé case of the York County Bank Appeal, 8 Casey, by the express terms of the agreement Moore was not to become a partner until he advanced a certain amount of capital. In Glenn v. Gill the agreement stipulated that the partner should not be liable for the firm-debts; and in the other cases cited those who were alleged to be partners were only sharers in the profits by way of compensation.
In the case of Faucet v. Stevens, bearing a stronger analogy to this case than any referred to by counsel, Faucet, the owner of the hides, was to pay a certain sum to Stevens for tanning, and Stevens to share any profits or bear his portion of any loss sustained. It was held that this was only compensation to Ste- *657 yens for work done upon Faucet’s property. Stevens furnished no capital, and was paid for his labor. In considering the facts by which the conclusion was reached in that case it must be conceded that it is closely allied to a partnership.
There is a marked distinction, however, between that case and the one we are considering. Here each firm advanced the capital upon which the business was to be conducted, some portion of it advanced in money and the balance raised upon the credit of the two firms. They were then to divide the profits or share the losses as provided by the contract.
We have found no case, and in our opinion none can be found, where the equities ordinarily applied as between partners have been denied in an analogous state of case. The fact that one firm had the control of the product and could alone sell did not destroy the rights of the others to have the firm-assets applied to the payment of the firm-debts. It is usual in articles of partnership to invest one with the sole power of signing the firm-name, and another with the power to purchase and sell, still it has never been held that such restrictions or limitations over the power of a partner will destroy his equities in a settlement of the partnership.
Anderson, Hamilton & Co. were engaged in an extensive business disconnected with this particular enterprise, and when Swearingen & Biggs are sought to be made liable on their partnership effects for the payment of Anderson, Hamilton & Co.’s debts, they say they are not partners.
The two firms were never united as one, but each continued to pursue its legitimate business, and had no connection except in this single adventure. By contract they had agreed to pack hogs on joint account for one season, and this did not have the effect to consolidate the two firms, and certainly did not affect the rights of those whose debts had been created long before this agreement was made, and therefore could have given no credit to this particular enterprise or to the product resulting *658 from tbeir purchases under it. All the members of either firm who speak on the subject say they regarded the product as liable for the debts incurred in making the purchase, and we see no reason for withholding from the firm of Swearingen & Biggs the right to have the proceeds of the pork sold applied to the payment of the debts incurred by the two firms in making the purchases; and if they are regarded as joint owners, sharing the profits and losses, the same equitable rule applies.
The judgment of the court below is therefore affirmed.