## Nelson Field v. Chas. W. Eilers et al.

1. PARTNERSHIP—*Defined.*—A partnership has been defined to be "The contract relation subsisting between persons who have combined their property, labor or skill, in an enterprise or business as principals for joint profit." 1 Bates on Partnership, Sec. 1.

2. SAME—*Goods Sold in Name of One Party.*—The fact that one party sold the goods in his own name, together with the inference that the proceeds were transmitted to him in his own name, does not necessarily rebut the idea of a partnership, because if a partnership exists, the fact that one partner by contract with his copartner is to have the control of the product for sale, will not prevent it being such.

Assumpsit.—Appeal from the Circuit Court of Effingham County; the Hon. TRUMAN E. AMES, Judge presiding. Heard in this court at the February term, 1902. Reversed and remanded. Opinion filed September 11, 1902.

S. F. GILMORE and WOOD BROS., attorneys for appellant.

E. A. RICHARDSON and E. N. RINEHART, attorneys for appellees.

MR. PRESIDING JUSTICE BIGELOW delivered the opinion of the court.

This is an action of assumpsit, brought by appellant against appellees, as copartners, to recover the sum of $339.85.

Appellee Dazey filed a sworn plea denying the existence of the partnership.   At the close of appellant's evidence, the court, at the instance of appellee Dazey, instructed the jury to find the issues in his favor.

This ruling of the court presents substantially all there is of the case, of which complaint is made.

Field v. Eilers.

Appellee Dazey was cashier of the Merchants & Farmers Bank, in the village of Findlay, in this State. Appellee Chas. Eilers bought hogs at the town of Dieterich, not far distant from Findlay. Dazey furnished the money, and Eilers did the buying. The hogs were shipped to various points but always in the name of Dazey. On one occasion Dazey accompanied Eilers to Chicago to dispose of some hogs, which had been brought. Eilers would pay for the hogs which he bought, by drawing checks in his own name on the Merchants & Farmers Bank of Findlay. At times when he ran out of checks on that bank, he would ask appellant, who is his father-in-law, to advance the money, and then Eilers would draw a check or checks on the Merchants and Farmers Bank, to repay appellant. At different times in March and June, 1901, when most of the transactions took place, the bank repaid appellant something over $1,500 which had been advanced by him to Eilers, in the purchase of hogs. During all of that time, Dazey was cashier of the bank. The claim in suit is partly for money advanced at Eilers' request in buying hogs, and partly for stock sold to him, the money advanced and stock sold being, as claimed by appellant, partnership transactions of Dazey and Eilers.

Neither Dazey nor Eilers testified on the trial, so that as to the real arrangement between them in the business done at Dieterich station, the court received no light from those who knew best about the matter. The case is further accentuated by doubt on account of the imperfect manner in which appellant presented what evidence he had.

On the 19th of January, 1901, Dazey wrote Eilers to buy hogs, stating the price at which he was to buy, also directing him to go south and buy as many hogs as he could get hold of, if he bought them cheap. On the 2d of February, 1901, Dazey wrote from Cleveland, Ohio, to Eilers, to buy a load of hogs, directing how and where to ship them, telling him the state of the market, at what prices hogs would make money, and cautioning Eilers about weights. On the 24th of February of the same year, Dazey wrote to Eilers

not to ship such light loads of hogs, if he wanted to make money on them; telling him what the loss would be on the car; directing him to buy only one load of hogs as high as five cents " till we see how the market is; " asserting as a fact light hogs bring ten cents more per cwt. than heavy ones.    Three telegrams were offered in evidence by appellant, one from Eilers to Dazey, and two from Dazey to Eilers.    Appellee Dazey objected to them, no reason for the objection being given, so far as the abstract shows, and the court sustained the objection.    The telegrams from Dazey related to the purchase of hogs; the one from Eilers, to the purchase of corn.

The postmaster at Dieterich, appellee Dazey making no objection to the evidence, testified that letters and stock journals came repeatedly to his office addressed to " Dazey & Eilers."

A witness who was connected with a bank which Dazey opened in Dieterich, asked Dazey what understanding he had with Eilers with reference to stock that was being shipped from Dieterich, and Dazey replied that there was no understanding, no contract.    Appellant also testified that he had a conversation with Dazey on the 8th of July, in which he said to Dazey, " You appear to be taking in a lot of stock to-day."    To which he replied, " Yes, we are taking in a lot of nice stock.    We are going to ship seven cars this evening."    The evidence also shows that Dazey accompanied this shipment of stock to Chicago, where it was sold.

The court having taken the case from the jury, all this evidence and all it tends to prove, must be taken to be conclusively true.

A partnership has been defined to be, " The contract relation subsisting between persons who have combined their property, labor or skill, in an enterprise or business, as principals for joint profit." 1 Bates on Partnership, Sec. 1.    That appellee Dazey was interested in the purchase of hogs in some way, either as sole principal or jointly with Eilers, there can be little doubt from the evidence.

Whether the matters stated in the letters were by way of disinterested advice, or by reason of a pecuniary interest, was a question of fact for the jury; and whether the pecuniary interest was by reason of the fact that Dazey bought the hogs for himself through Eilers, or because he was jointly interested with Eilers, or because Eilers was using Dazey's money and so the latter had the interest of a creditor in what Dazey did, all such matters, by reason of the ambiguity of the language and the acts proven to have been done by Dazey, were proper matters for the consideration of the jury. The language used by Dazey, and the acts proven to have been done by him, were not of the definite character that the court could say, as a matter of law, that Dazey was not a partner with Eilers. The joint " enterprise " of Dazey and Eilers could certainly be inferred by a jury from the evidence as it stood, for Dazey furnished the money and Eilers furnished the labor in the purchase of the hogs. And if there was no understanding between Dazey and Eilers as to the hogs shipped, a jury would have the right to draw the conclusion that they were interested in the " joint profits " of the business; Eilers was probably not buying hogs for the love of physical exercise or for mere mental training. And, if they were interested in the joint profits, the jury would also be authorized to find, that although there was no understanding between them, a " community of interest " existed in the hogs. Fougner v. First National Bank of Chicago, 141 Ill. 124; State Nat. Bank v. Butler, 149 Ill. 575.

The fact that Dazey sold the hogs in his own name, together with the inference that the proceeds were transmitted to him in his own name, does not necessarily rebut the idea of a partnership, because if a partnership exists, the fact that one partner by contract with his copartner is to have the control of the product for sale will not prevent it being such. 1 Bates on Partnership, section 39, citing Meador v. Hughes, 14 Bush, 652.

In relation to the telegrams offered, both the proofs and the objections thereto, are of such indefinite character that

we can not pass on the questions sought to be presented. It is not shown whether they are originals, as written by the senders, or whether they are the messages as received at the places to which they were sent, or whether they are letter-press copies or other kinds of copies. It is a familiar rule of law that he who alleges error in the trial court's rulings must show such fact. We are unable to say whether the court was right or wrong in refusing to admit this evidence.

We are of the opinion that there was evidence tending to show the existence of a partnership, and that appellee Dazey should have been put to his proof to negative the evidence which was in, with all of the legitimate inferences that a jury could draw therefrom. It is true the evidence is ambiguous as to the relations which existed between Dazey and Eilers. That it shows some kind of a relation, either of debtor and creditor, employer and employe, or principals with equal powers, is certain beyond question; but what that relation is, is a question of fact to be determined by a jury upon proper instructions.

The Circuit Court erred in taking the case from the jury, and for this error the judgment of the court is reversed and the cause remanded for a new trial.