## J. E. Dazey v. Nelson Field.

1. PARTNERSHIP—*when, does not exist.* Held, from the particular facts of this case, that a partnership did not exist between the defendants.

Action of assumpsit. Appeal from the Circuit Court of Effingham County; the Hon. SAMUEL L. DWIGHT, Judge, presiding. Heard in this court at the February term, 1903. Reversed. Opinion filed September 10, 1903. Rehearing denied March 10, 1904.

R. M. PEADRO and E. A. RICHARDSON, for appellant.

S. F. GILMORE and WOOD BROS., for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Nelson Field, appellee, brought this suit in assumpsit, against J. E. Dazey and Charles W. Eilers, as partners, filing a declaration containing the common counts. Dazey pleaded the general issue and also filed a plea verified by affidavit, denying partnership. A default was entered against Eilers. At the close of the evidence offered by plaintiff, Field, the court, on motion of Dazey, directed the jury to find the issues in favor of the latter. On an appeal to this court, the action of the Circuit Court was reversed and the cause remanded for a new trial. Field v. Eilers, et al., 103 Ill. App. 374. Upon the second trial, Eilers was permitted to file a plea of the general issue and the jury returned a verdict against the defendants for $342.75. Motions for new trial and in arrest of judgment were overruled and judgment entered for the amount of the verdict, from which the defendant, Dazey, alone appeals.

The proofs in the case showed that appellant and his father owned a bank at Findlay, Illinois, called the Merchants and Farmers Bank, of which appellant was cashier. Prior to December 29, 1900, Eilers lived near Findlay and was engaged in buying and shipping stock. Having no money of his own, he was permitted to draw checks for the payment of stock upon the Merchants and Farmers Bank, which were paid by the bank and charged to his account. The stock was shipped in the name of appellant, J. E. Dazey, to whom the proceeds of each shipment were returned, the same being afterwards placed to Eilers' credit. The only source of profit to appellant was the interest on overdrafts and the exchange paid to the bank by Eilers. On or about the date last named, Eilers moved to Dieterich, Illinois, where appellee, who was his father-in-law, also resided, and desiring to continue in the same business, made a similar arrangement with appellant, concerning the purchase and shipment of stock, as indicated by the following letter, from Dazey to Eilers, dated January 21, 1901:

"Your letter of Dec. 29, 1900, rec'd and contents noted. We have some pretty chilly weather here to-day. Am glad

that you got through all right. About shipping hogs, you can do as we talked before you left. You may ship as you did when you were here and I will charge you a reasonable interest, but while you have no money of your own I want you to let me advise you about buying and shipping. I will give you the benefit of my experience. You must ship the hogs in my name and send me the weight and cost of each car and have the firm that you ship to send me a duplicate of the acc't sales. I want to know whether you make or lose money as long as you have none to put up to pay losses. If you will do as I tell you I don't think you will lose any money. I want you to ship in my name for this reason: if there should be a wreck on the R. R. the claim would be coming to me. If you lived here I would not be so particular about it, but the men here that ship on over-drafts bill the stock in my name. I get the markets every day by wire and will keep you posted. If I send you any messages I will expect you to pay for them. I think for the present you had best ship only one car at a time, but if the market looks good, very good, it would be all right to buy more than one load. You want at least 16,500 lbs. on a car for it will cost you just as much for a small load as a heavy one. I would like to see you do well, as it seems you have had some very bad luck. There is not many fellows I would help more than I would you. I will give you all the advice that I can in the shipping business. John Davis thinks of going to your place to buy some mules. When you ship in my name the draft for the hogs will come to me and I will give your account credit with it. I wish you good success. Write me for any information you may need."

Eilers thereupon proceeded to buy stock and pay for the same with checks drawn on said bank in his own name, the shipments being made and returns received in the name of appellant. In July, 1901, appellant and another party started a bank at Dieterich, where some of Eilers' checks were also paid, but his general account was kept at the Merchants and Farmers Bank at Findlay, and the returns for stock were made there to appellant. On several occasions when Eilers claimed to be out of checks on the Merchants and Farmers Bank, appellee gave him checks on another bank to pay for stock, and at other times appellee, at the request of Eilers, paid for hogs which were delivered for shipment in Eilers' absence. Appellee at one time also sold

Eilers some stock to fill out a shipment. The greater portion of the money advanced by appellee was repaid to him by checks drawn by Eilers on the Merchants and Farmers Bank at Findlay. Appellee claims, however, that there is a balance due him, for the stock above mentioned and for money advanced, of $339 and interest, and for that amount he seeks by this suit to charge appellant and Eilers as partners.

The opinion of this court, when the case was here before, lays stress upon the fact that upon that trial neither Dazey nor Eilers testified, and that consequently the court received no light as to the real arrangement between them from the parties who knew best about the matter. Both of those parties, however, testified at the last trial. Dazey stated positively there was no partnership between them and that he derived no benefit whatever from the transactions with Eilers except such as accrued to him by reason of his interest in the bank, which charged Eilers for exchange and interest on overdrafts. Eilers was called by appellee in rebuttal. He did not testify as to whether there was or was not a partnership, but merely denied a conversation which appellant claims to have had with him in the presence of one John Davis. The evidence on the second trial showed conclusively that there was no actual partnership between Dazey and Eilers, and failed to show that Dazey held himself out to either Field or the public generally as a partner of Eilers. It is true that certain parties testified to conversations with Eilers in the absence of Dazey, in which he made statements indicating that Dazey was his partner. The court below properly held that this evidence was inadmissible as against Dazey, while admitting it as against Eilers. But there was no evidence against Dazey which tended to show that Field advanced money or sold stock to Eilers under the belief that Dazey and Eilers were partners.

We are, therefore, of opinion that the verdict was not warranted by the evidence, and the judgment against appellant, based thereon, must be reversed.

*Reversed.*

Dazey v. Field.

Finding of facts, to be incorporated in the judgment of the court.

We find, first, that there was no actual partnership between appellant, J. E. Dazey, and Charles W. Eilers; second, that Dazey did not hold himself out to Field or to the world in general as a partner; and, third, that appellant neither did anything himself or knowingly permitted anything to be done to induce any one to believe there was a partnership between him and Eilers.