CHARLES S. LEEDS

*v.*

GEORGE P. TOWNSEND.

*Opinion filed June 19, 1907—Rehearing denied October 9, 1907.*

1. PARTNERSHIP—*when question of partnership is determined by acts of parties.* In determining whether a partnership exists, if the agreement is not in writing, the intention of the parties must be ascertained from their language and conduct.

2. SAME—*agreement to share losses is not essential to partnership.* An agreement to share in losses as well as in profits is not essential to the creation of a partnership, particularly in an enterprise such as promoting a railroad, where no losses are contemplated outside of labor and personal expenses.

3. SAME—*when partnership is not based on a contract opposed to public policy.* A partnership agreement to promote a railroad company, organize a construction company and secure the contract for construction at a greater price than required to build the road, take stock and bonds of the railroad in payment and share in the profits thus made, is not, as between the partners, void as against public policy, where the stock was not subscribed and paid for, and the stock and bonds, whatever their face value, only represented the actual work done by the construction company, which used them to raise funds to build the road.

4. SAME—*when "salary" must be treated as profits.* Where parties enter into a partnership to promote and construct a railroad and share in the profits of the enterprise, and one partner agrees to devote his time, without charge, to securing persons to finance

the road, if such partner, in making the contract for funds, secures an allowance of a certain number of shares of stock and a certain sum in cash as "salary" for his services in promoting the deal, both stock and salary are profits, in which the other partner is entitled to share.

5. APPEALS AND ERRORS—*contract against public policy will not be enforced, even though parties have not raised the point on appeal.* While it is the general rule that a point not urged in the Appellate Court cannot be urged upon further appeal to the Supreme Court, still if a contract which is involved in the case is clearly in violation of law or against the declared public policy of the State the court may refuse to lend its aid in enforcing it, without regard to whether the parties themselves have raised the question of public policy involved or not.

WRIT OF ERROR to the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

OLIVER R. BARRETT, for plaintiff in error.

HECKMAN, ELSDON & SHAW, and CARNAHAN, SLUSSER & COX, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This suit was commenced by a bill in chancery in which George P. Townsend is complainant and Charles S. Leeds defendant. The bill alleges that a partnership or joint enterprise was entered into between complainant and defendant and prays for an accounting. The answer denies the partnership, and alleges that Townsend's remedy, if any, is adequate at law. The superior court of Cook county found that a partnership existed, and decreed that Townsend was entitled to 118½ shares of stock as profits in the enterprise. From this decree Leeds appealed to the Appellate Court for the First District, where the case was reversed upon cross-errors assigned by Townsend, the Appellate Court holding that Townsend was entitled to the 118½ shares of stock and also to one-half of $5000 cash

that had been received by Leeds as salary. (See *Leeds* v. *Townsend*, 89 Ill. App. 646.) When the cause was re-instated in the superior court a decree *pro forma* was entered in accordance with the mandate of the Appellate Court. From this decree the cause was again appealed to the Appellate Court for the First District, where the decree was affirmed. The cause is before this court on a writ of error to review the judgment of the Appellate Court for the First District.

On or about November 15, 1894, plaintiff in error and defendant in error entered into a verbal partnership agreement for the promotion, construction, equipment and operation of an electric surface railroad from Chicago to Aurora, Illinois. By this agreement plaintiff in error was to devote his time to securing franchises, rights of way and to financing the enterprise. Defendant in error was to furnish plans and data and to devote such time as he could outside of his other regular employment. A charter was obtained for a railroad with a capital of $1,250,000, and subsequently a construction company was organized with a capital of $100,000. The evidence shows that plaintiff in error and defendant in error were to control the construction company, and the contract for the construction of the railroad was assigned to the construction company by Leeds, who had secured it in the first instance from the railroad company. The construction company was paid in stock and bonds of the railroad company a sum largely in excess of the actual cost of construction. The stock and bonds received by the construction company were used for the purpose of raising funds to construct the road. The profits in controversy are 237 shares of stock received by Leeds from the construction company, being profits claimed to belong to the partnership resulting from the enterprise. Plaintiff in error also received $5000 in cash, which he claims was paid him for his services in connection with the promotion and organization of these corporations.

There is no dispute about the receipt by plaintiff in error of the 237 shares of stock and the $5000 in cash, but he denies that defendant in error is entitled to one-half, or any other portion, of the profits made out of the promotion and construction of this railroad. Plaintiff in error's contention is that a court of chancery has no jurisdiction, for the reason that the evidence does not establish the existence of a partnership; that if a partnership existed it was formed for the purpose of securing profits from a contract fraudulent in fact and opposed to public policy; and lastly, that the court erred in awarding defendant in error one-half of the $5000 salary, even if it be conceded that plaintiff in error's other contentions cannot be sustained.

Defendant in error testified that he had spent a great deal of time in investigating and in maturing a scheme to construct an electric railroad from the western limits of Chicago through intermediate towns to Aurora; that he had accumulated and prepared the data relating to the cost of construction, but being unable to give the enterprise his personal attention owing to other engagements, he laid the matter before plaintiff in error and proposed to take him into the enterprise and give him a half interest if he would devote all his time to the enterprise. Defendant in error agreed to furnish a prospectus and any data required and devote as much time as possible outside of his regular employment, but for business reasons was not to be openly connected with the project. Defendant in error testifies that Leeds, after consideration, accepted the proposition and went to work to interest capital. Both parties agree that the anticipated profits were to come from stock and bonds. Both parties agree that plaintiff in error was to find persons who were willing to put up the money to construct the road for an interest in the property, and that Leeds was to pay his own expenses while endeavoring to enlist capital in the enterprise. Defendant in error testified that from his experience he expected that there would be a large profit in

the construction of this road, and that it was agreed between the parties that whatever was left after the expense of building and other expenses would go to the construction company, and that he and plaintiff in error would take their share of whatever was left in the hands of the construction company. It is also shown that plaintiff in error went to New York a number of times for the purpose of interesting capitalists in this enterprise. The evidence shows that when the parties were in Chicago they were in almost daily communication with each other about this enterprise, and that when plaintiff in error was in New York he kept in touch with the defendant in error by correspondence, reporting in detail his progress in seeking to interest capital. Under date of January 8, 1894, he wrote defendant in error that "as this is your idea I hardly feel at liberty to depart from the lines laid down for the distribution of profit without your consent." In reply to this defendant in error said: "I have the fullest confidence that you will protect our mutual interests in every possible way. * * * If we can get the right kind of people in with us at the start we are O. K., as there are many ways in which we can make a profit out of the enterprise over and above our direct interest." Under date of January 12, 1894, plaintiff in error wrote defendant in error: "The 'air people' will furnish cars and the compressing plant complete, to be paid for only if O. K., and will take their entire pay in bonds if our project will hold water." In the same letter plaintiff in error urges defendant in error to get the matter of right of way and franchises in better shape. The correspondence between the parties continued, in which their mutual interests were referred to, and the impression produced by reading these letters is that there was a perfect understanding between the parties and leaves no doubt that they considered themselves full partners in this enterprise. Defendant in error testified that plaintiff in error never denied the partnership until this suit was brought. In our opinion the

finding of the court below that a partnership existed between the parties is well supported by the evidence.

It is contended by plaintiff in error that the agreement did not provide for a sharing of losses, and that for that reason it cannot be held that a partnership existed. This contention is properly disposed of by the Appellate Court under the authorities cited. In *Fougner* v. *First Nat. Bank,* 141 Ill. 124, this court said: "It is generally said that to constitute persons partners they must share in the profits and losses. It is, however, well settled that it is not now necessary to show that there is an agreement to bear losses in order to make one liable as a partner. Sharing in the profits is the test." Owing to the particular nature of the enterprise in which these parties were engaged, it was not contemplated that there would be any losses outside of the labor and personal expenses incurred in promoting, and these were provided for in the agreement. In determining whether a partnership exists, if the agreement is not in writing, the intention of the parties must be ascertained from their language and conduct. *State Nat. Bank* v. *Butler,* 149 Ill. 575.

It is next contended by plaintiff in error that if a partnership existed it was formed for the purpose of securing profits from contracts fraudulent in fact and opposed to public policy. The plaintiff in error contends that the sole profits contemplated by this agreement were to come from stock and bonds to be given to the construction company over and above the cost of construction,—that is, they intended to cause the railroad company to enter into a contract to pay the construction company an improvident price for building the road. They would then procure its construction for a fraction of the price and appropriate to themselves their portion of the stock and bonds received by the construction company above the actual cost of constructing the road. It is insisted that such a policy is opposed to the policy of the law. To this contention a suf-

ficient answer is that it is raised for the first time in this court. On defendant in error's motion a copy of plaintiff in error's Appellate Court brief in this cause has been filed in this court, and from an inspection of the same it appears that this question was not mooted in the Appellate Court. It cannot be raised for the first time in this court. *Case* v. *Phillips,* 182 Ill. 187; *Grand Lodge* v. *Orrell,* 206 id. 208.

The plaintiff in error admits that this question was not raised in the Appellate Court and that the rule announced in the cases above cited applies generally, but he insists that when it appears that a contract is void as being contrary to law or opposed to sound public policy the question may be raised at any time, or that the court will *sua sponte* take cognizance of the illegality in a contract and refuse to lend its aid to its enforcement. If it could be said that the contract in question was clearly against the public policy of this State,—that is, that it had a tendency to be injurious to the public or against the public good,—or if it were in violation of a statute or some rule of the common law, it is true that the courts of this State would refuse their aid to compel an enforcement of such contract and would leave the parties without relief, and this course would be pursued whether the question had been raised by the parties or not. Before a court will declare contracts void on the ground of public policy, it must be established to the satisfaction of the court, beyond a doubt, that the contract violates the public policy of the State. Courts know nothing of public policy except from the constitution and laws and the course of administration and decision. (*License Tax Cases,* 5 Wall. 462; Page on Contracts, sec. 326.) While it is true the partnership contract in question contemplated that the railroad corporation would pay in its stock and bonds a sum in excess of the actual cost of construction, still it must be remembered the stock and bonds, whatever may have been their face value, only represent the work actually done by the construction company. It is not pre-

tended that the stock of the railroad company has been subscribed and paid for in cash, or in any other manner than by the construction company's work in the building of the road. There is not a particle of evidence showing that the stock of the railroad had any value at the time the construction company agreed to build the road and take the stock and bonds in payment. The stock and bonds of the railroad company only became valuable after the construction company brought into existence the tangible property and put it in a condition, which gave a reasonable assurance that it would ultimately be profitable. The persons who put up the money to build the road received, and justly so, stock and bonds in excess of the amount of money furnished. They took the risk of the total or partial failure of the enterprise, and we fail to see wherein there is anything in the transaction against public policy or in violation of any law of the State, and plaintiff in error has failed to point out any statute or rule of public policy which has been violated. If, under any view, the transactions of these parties would be impeachable for fraud, there is no one before the court who is complaining except the plaintiff in error, and he is *in pari delicto* with defendant in error. The whole transaction has been consummated, and while some of the means resorted to in the transaction might be vulnerable to an attack by innocent and non-concurring stockholders, if any, still this affords no reason why plaintiff in error should be permitted to retain all the profits of the enterprise to the exclusion of his partner. The existence of the partnership and the receipt of the profits raise an implied promise to pay defendant in error his just share, and the action would seem to be sustainable on this implied undertaking, and is not, strictly speaking, a suit to enforce the partnership agreement; but we rest our judgment on the broad ground that the illegality of the contract, or that it is contrary to public policy, does not appear in the contract itself or in the methods employed in carrying it out.

The final contention of plaintiff in error is, that the court erred in requiring a division of the $5000 cash which was allowed plaintiff in error as salary. In this we cannot agree with plaintiff in error. By the original agreement plaintiff in error agreed to devote his time to the enterprise and to pay his own expenses. After certain parties had been found who were willing to put up the money to construct the road, plaintiff in error succeeded in securing an agreement allowing him $5000 for services rendered to the enterprise prior to November 1, 1895. The services for which this allowance was made were the identical services plaintiff in error had agreed to render free of charge by his contract with defendant in error. In making the deal by which the money was raised plaintiff in error was representing the partnership, and not himself at all. He succeeded in securing an allowance of the stock in question and $5000 in cash. The stock which he retained for himself and Townsend was in consideration of what he and his partner had done to promote the enterprise, and the character of the money could not be changed by calling it salary for services. It was none the less a part of the profits of the partnership because a contract to which defendant in error was not a party referred to it as "salary" for services rendered. The 237 shares of stock might with equal propriety have been called salary. The essence of the contract was, that plaintiff in error received $5000 in cash and 237 shares of stock as a profit out of the promotion and construction of this railroad, and since, as we have seen, defendant in error was a partner and entitled to one-half of the profits, it follows that there was no error in decreeing an accounting on that basis.

The judgment of the Appellate Court for the First District is affirmed.

*Judgment affirmed.*