[Civ. No. 3377.  Fourth Dist.  June 7, 1946.]

REX GOSSETT et al., Respondents, v. E. J. SCHABELITZ, Appellant.

Luce, Forward, Lee & Kunzel for Appellant.

Walker, Adams & Duque and Gray, Cary, Ames & Driscoll for Respondents.

BARNARD, P. J.—This is an action for declaratory relief, to determine whether a certain business was operated as a corporation, a partnership or a joint venture, to determine the respective interests of the parties in this business, and for an accounting.

For some years E. J. Schabelitz conducted a business in San Diego under the name of Schabelitz Research Laboratories. On May 10, 1941, he entered into a written partnership agreement with one Morgan and from that time until about February 1, 1942, the business was carried on by that partnership. More money was then needed to finance the manufacture and sale of a certain prophylactic which had been developed by Schabelitz, and which had been accepted by the army and the navy. About that time James E. McMurray and his stepson, Roger T. Smith, entered the picture. McMurray suggested the formation of a corporation and gave Smith a check for $2,500, which was put in a special account in a bank in Smith's name, to be used in the business.

On February 14, 1942, an agreement was signed by Schabelitz, Smith and Morgan, which provided that a corporation should be organized to be known as Schabelitz Research Laboratories, Inc.; that Schabelitz should convey to the corporation the personal property theretofore used in the business, including formulas, chemicals, etc., in return for 50 shares of the common stock of the corporation; that Morgan should convey his interest in this property to the corporation in return for 50 shares of preferred stock; that Smith should pay to the corporation $5,000 for 50 shares of common stock; and that the agreement was conditional upon the corporation being "incorporated" within 90 days, and upon the application with reasonable diligence for a permit authorizing the issuance of the shares thus conditionally subscribed for.

On March 5, 1942, articles of incorporation were filed in the office of the Secretary of State which were signed by McMurray, Schabelitz, Smith and two others who are not material here. The franchise tax was paid for the year 1942 and some stationery bearing the corporate name was "used in the trade." However, no transfer of the property previously used in the business was ever made to the corporation by Schabelitz or by Morgan, no application for permission to issue stock was ever filed with the Commissioner of Corporations, no permit to issue stock was ever given, and there was never any meeting of the stockholders or election of directors.

The business of operating the laboratories and the manufacture and sale of the prophylactic was continued with Smith taking an active part therein and furnishing more money from time to time. About June, 1942, the plaintiff Gossett joined the business, putting in his time and later putting in money. On July 24, 1942, an agreement was signed by Schabelitz, Smith and Gossett which, after declaring an intention to apply to the Corporation Commissioner for permission to sell shares of stock, provided that Schabelitz agreed to purchase 10/37 of the first block of stock of the Schabelitz Research Laboratories, Inc. which the commissioner should authorize to be sold and in return therefor to convey to the corporation the properties known as the Schabelitz Research Laboratories, with all formulae and equipment involved in the manufacture of prophylactics; that Smith agreed to purchase 17/37 of the first block of stock thus authorized to be issued and to pay therefor the sum of $8,500 or to cancel indebtedness in an equivalent amount; and that Gossett agreed to purchase 10/37

of the stock so authorized to be issued, and to pay $5,000 for the same.

On July 30, 1942, Smith, Schabelitz and Gossett signed an agreement agreeing that they thereby elected themselves as temporary officers of the corporation. About this time these parties discussed Morgan's interest in the assets of this business and some sort of an account was set up purporting to show that the corporation owed Morgan $5,000.

After July 24, 1942, Gossett, Smith and Schabelitz continued to operate the business. Shortly after that date they agreed that it would be better to abandon their plan of operating this business as a corporation and planned to undertake to form of partnership for the conduct of the business. Several drafts of proposed partnership agreements were prepared over a period of two or three months, but the parties were unable to agree on the terms and no such agreement was ever signed. Serious differences arose between these parties over the way in which the business was, and should be, carried on and they were also unable to raise sufficient money with which to manufacture goods and handle orders which were coming in. During October, 1942, as the court found, "the said business enterprise was without funds" and owed bills amounting to about $7,000, and by December, 1942, the indebtedness had increased to $12,638.88. As the court found, Gossett and Smith have not taken any part in conducting the business since October, 1942, and since that time the business has been conducted by Schabelitz. It further appears that Schabelitz borrowed on his own credit sufficient sums to pay off substantially all of the unpaid debts of the enterprise and that these amounts have since been repaid to him out of the business.

In June, 1943, Gossett and Smith brought an action in the United States District Court against Schabelitz seeking to dissolve a partnership known as "Schabelitz Research Laboratories, Inc." and asking for an accounting. By its judgment, which has become final, that court adjudged and decreed that no partnership existed between these parties and that "plaintiffs are not entitled to any decree dissolving any partnership, or to any decree dispelling the defendant from any partnership, or permitting the plaintiffs or either of them to continue the operation of any partnership, or for any partnership accounting."

Thereafter, this action was filed. The court found most of the facts above set forth and in addition made a number of findings to which brief reference may be made. It was found that the preorganization agreement of February 14, 1942, was executed with the intention of forming a corporation and having stock issued in accordance with its terms; that this agreement is a valid and binding agreement and was not made in violation of law; that by reason of said preorganization agreement and the subsequent filing of articles of incorporation of Schabelitz Research Laboratories, Inc., said corporation "came into being and became the equitable owner" of the property described in that agreement which was to be conveyed to the corporation by Schabelitz; that the corporation then "assumed control of the assets theretofore owned by the Schabelitz Research Laboratories, a partnership, and received and disbursed funds furnished by plaintiff Smith"; that while no property was transferred to the corporation by Schabelitz or by anyone else Schabelitz has, by his acts and conduct, treated "said described property" as belonging to said corporation and is estopped to deny that this property is the property of the corporation; and that the corporation is the owner of the property described in the agreements of February 14 and July 24, 1942.

It was also found that, in entering into the purported agreement of July 24, 1942, the plaintiffs and the defendant conspired together to evade and violate the Corporate Securities Act (Stats. 1917, p. 673, as amended; Deering's Gen. Laws, Act 3814) ; that neither at that time nor later did they intend to apply to the Corporation Commissioner for any permit for the issuance of such stock; that they depended upon that purported agreement to obviate the necessity of any such permit; that this was a device by which these three parties attempted to effect a transfer of the interest of Morgan to Gossett; and that the transaction represented in said purported agreement of July 24, 1942, is illegal and void.

It was further found that on or before November, 1942, Smith advanced $8,500 for 17/37 of the corporate assets, Schabelitz turned over property of the value of $5,000 for 10/37 of the corporate assets, and Gossett advanced to the corporation $5,000 for 10/37 of its capital assets; that these contributions were made without a permit from the Corporation Commissioner; that in addition to such contributions Gossett advanced $278.04 to the corporation and Smith ad-

vanced to it $6,772.77; and that the corporation received these sums from these plaintiffs. As conclusions of law, it was found that no partnership ever existed; that all of the parties are estopped to deny that the corporation is the owner of the property which was to be conveyed to the corporation under the terms of the agreement of February 14, 1942; that the agreement of July 24, 1942, is illegal and void; that neither Smith, Gossett nor Schabelitz are entitled to any redress on account of any funds or property they contributed "for any share of the corporate assets," but that Gossett is entitled to recover $278.04 and Smith to recover $6,772.77, with interest, these being the amounts they contributed in excess of the amount of their subscriptions for stock in the corporation. Judgment was entered that Gossett and Smith recover these respective amounts from the corporation, that Schabelitz is estopped from denying that the corporation is the owner of all the property used in this business, that he has no right, title or interest in or to any of these properties, and that nothing contained in the judgment shall prejudice the right of any party to the action to later perfect his right to become a shareholder in the corporation. The defendant Schabelitz has appealed from the judgment contending, among other things, that the findings and judgment are not supported by the evidence and that the judgment is contrary to law.

A number of the court's findings and conclusions are entirely unsupported by the evidence in the record. There is nothing in the agreement of July 24, 1942, which discloses on its face that it is illegal or in violation of the Corporate Securities Act. It specfically provided for the issuance of stock only when the same should be authorized by the Commissioner of Corporations. While it does not mention Morgan's interest not only was he to receive preferred stock, instead of common stock, but it does not appear that other arrangements had not been made which were satisfactory to him. And there is no other evidence that the parties did not intend to apply for a permit, as provided in that agreement, or that in entering into it they conspired to evade the Corporate Securities Act. The evidence discloses, without conflict, that at that time the parties did intend to secure a permit for the issuance of the stock.

The finding that by reason of the preorganization agreement of February 14, 1942, and the subsequent filing of articles of incorporation, this corporation became the equitable

owner of the property which Schabelitz had conditionally agreed to convey to the corporation, is entirely unsupported. The agreement to convey on certain conditions would not, of itself, constitute an equitable conveyance. The filing of articles of incorporation was but one step in meeting the conditions and was not sufficient, of itself, to pass any equitable interest in the property.　　The finding that the corporation then assumed control of the assets theretofore used in the business and received and disbursed funds supplied by Smith, is also without evidentiary support. While stationery may have been printed with the corporate name, and may have been "used in the trade," we are not here concerned with anyone who may have been deceived thereby. As between the parties themselves, it merely appears that for some reason which is not disclosed they delayed the completion of the corporation proceedings, and the transfer of the various assets to it in return for stock. In the meantime they continued the existing business by at least an implied mutual agreement. No attempt was made to convey anything to the proposed corporation and the parties, as individuals, continued to carry on the business. At first the money advanced and used for carrying on the business was carried in a bank account under the name of "Robert T. Smith Special" and withdrawn as needed, and later was handled through another bank account in the name of "Schabelitz Research Laboratories," with a provision that checks should be signed by any two of the three parties, Smith, Schabelitz and Gossett, as individuals. There is no evidence that during the period in question Schabelitz, or anyone else, by acts or conduct treated the property used in the business as belonging to the corporation. It appears that they all treated it merely as belonging to the business which they were conducting by mutual agreement. While the evidence indicates that these parties originally intended to complete the formation of the corporation, and that the business should eventually be conducted in that form, this is the most that appears, and even that idea was later abandoned. It clearly appears that the business was conducted in exactly the same way, both before and after the corporate idea was abandoned. There is no evidence that the amounts paid in by these parties which were paid at intervals over a period of about eight months, were paid "for corporate assets" under the two agreements, or that the amounts paid by Smith and Gossett in excess of their conditional preorganization subscriptions were on any

different basis, with respect to legality, from the prior payments made by them. Some of these payments were made before the idea of completing the corporation to carry on the business was abandoned, and some thereafter. All were made for the purpose of keeping the business going, and there is no evidence that any were made as payment for corporate assets.

While there may have been a de facto or a de jure corporation for some purposes, as the respondents contend, it not only clearly appears that no assets were turned over to that corporation but that the parties, by mutual agreement, very definitely intended to and did carry on the business during the period in question in some other form. Assuming that this was not a partnership, as established by the prior judgment in the federal court, it does not necessarily follow that the business was conducted as a corporation. While the relationship between these parties may have lacked some of the elements of a partnership, it was a joint venture in which each of them had rights and assumed obligations. (*Butler* v. *Union Trust Co.*, 178 Cal. 195 [172 P. 601].) In that case, the court said: "A joint adventure, however, is similar to a partnership, and, being of a similar nature, the right to an accounting of profits in accordance with the agreement therefor and the obligations growing out of such agreement between the parties are governed by the same rules of law. . . . Since the facts alleged and found entitled the plaintiff to an accounting for the purpose of determining what were the net profits of the venture, the fact that the agreement and transactions had between the parties did not, as found by the court, constitute a copartnership in the strict sense, is wholly immaterial." In the case before us, disregarding the findings which are unsupported by the evidence, the material facts found disclose a joint venture and called for an accounting, and the court should have so held. That accounting should cover the period from approximately February 1, 1942, to October 31, 1942, during which these parties by mutual agreement were carrying on this business together, and should include the interest, if any, of Morgan, whose exact position in the enterprise during that period does not very clearly appear in the record before us.

The judgment is reversed.

Griffin, J., concurred.