### Thomas Bradley v. Donald S. Marshall, Phillip Bradley and Marshall-Bradley Co., Inc.

[285 A.2d 745]

No. 161-70

Present: **Holden,** C.J., **Shangraw, Barney, Smith** and **Keyser,** JJ.

Opinion Filed December 7, 1971

*Ryan, Smith & Carbine,* Rutland, for Plaintiff.

*James W. Wright,* Woodstock, for defendants.

**Holden, C.J.** This action is in equity. Its main purpose is to settle accounts between former business associates. The chancellor, who heard the case and made findings of fact, thereupon dismissed the action. The plaintiff appeals.

The seeds of this controversy are imbedded in a partnership which the plaintiff Thomas Bradley and the defendant Marshall formed on April 1, 1955. The firm was organized for a term of ten years under the name Marshall-Bradley Co., for the purpose of engaging in the plumbing, heating and appliance business in Woodstock. The written partnership agreement provides that the capital required to carry on the business shall be advanced by each of the partners in equal amounts. The agreement concludes with the provision that "(u)pon final dissolution of the firm by lapse of time or otherwise, the said business shall be wound up, the debts paid, and

the surplus divided between the partners in accordance with their interest therein."

At the time of the agreement the partners jointly borrowed $2,000. The plaintiff borrowed an additional $1,000 by way of a mortgage on his home. The proceeds of this loan were deposited in the firm account to provide working capital. The loan of $2,000 was repaid from partnership earnings. Other than his share in the proceeds of this note, the defendant Marshall has made no cash investment. The partnership was registered with the state tax department and commenced doing business as of April 1, 1955.

On February 15, 1956, a new partnership agreement was made to include Phillip Bradley, the plaintiff's brother, as a partner. The new agreement provided for advancement of capital on the ratio of 45% by the original partners and 10% by the new partner Phillip Bradley. Except for this provision, the terms of the original agreement were substantially restated and confirmed. This included the provision for an annual inventory and accounting between the partners.

The new partner, Phillip Bradley, contributed $1,000 as his share in the firm's capital. The defendant Marshall testified that it was his "understanding" that Phillip's capital contribution was used to repay the $1,000 previously advanced by the plaintiff. This was stoutly denied by the plaintiff. Although issue on this point was joined in the pleadings, the findings do not settle the question.

After reporting the history of the Marshall-Bradley Co., the findings tell us that the parties conducted the business and partnership until January 11, 1960, when they filed articles of association to establish a corporation to be known as Marshall-Bradley Co., Inc. The articles state the purpose of the proposed corporation was to carry on the same business previously conducted by the partnership. They further specify that the capital stock shall consist of two hundred shares of common stock with a par value of fifty dollars per share. The articles are subscribed by Thomas and Phillip Bradley and Donald Marshall.

Apparently there was no stock subscription within the provisions of 11 V.S.A. § 265. No affidavit of the amount of stock proposed to be issued and the consideration to be received for such stock was filed with the secretary of state. The sub-

scribers to the articles filed no certificate of capital actually paid in. The requirements were essential prerequisites to the lawful issuance of stock and the commencement of corporate business under the corporation law then in effect. 11 V.S.A. §§ 267–269 (amended 1969, No. 286 (Adj. Sess.) § 4 as amended 1971, No. 51 § 15, eff. July 1, 1971.)

Although no capital stock was issued, in January 1963, the defendant Marshall, acting as treasurer, filed an election by the shareholders to be treated as a "small business corporation" for income tax purposes, as then provided in 32 V.S.A. § 6102. Donald Marshall, Thomas and Phillip Bradley, in consenting to this method of taxation, signed a statement that they acquired stock in the corporation in the amount of fifty, fifty and ten shares respectively. Later the same year real property was acquired and mortgaged in the name of the corporation.

The findings also report that other land was acquired by Marshall-Bradley Co., Inc., in 1965. The parties reported their income and have transacted banking business in the corporate name.

In 1968 counsel for the defendant Marshall informed him by letter that "some of the requisite documents for completing the incorporation had not been filed." He counseled that "they proceed with filing these documents as soon as possible."

The court found that the parties have held themselves out to the public as a corporation and that the plaintiff has signed various corporate documents dealing with loans, mortgages and tax reports. The chancellor went on to say . . . "(w)e do not believe that he can now be heard to say that he understood and considered that he was still operating as a partnership, even though he claims to have taken and had a minor role in the conduct of the details of the business." On the strength of these facts the court granted the defendant's motion to dismiss the complaint.

The record reveals other factors which are not within the composition of the findings. According to the plaintiff's evidence, the reason no capital stock was issued lies in the fact that the defendant Marshall failed to contribute capital equal to the plaintiff's investment as he agreed in the prior partnership agreements. This was a source of discord between the plaintiff and Marshall. And this was the principal cause for

the plaintiff's withdrawal from active participation in the business in 1969. The plaintiff offered to buy Marshall's interest. Since Marshall didn't want to sell, the plaintiff then offered to sell his interest for $30,000, but the sale was not consummated.

According to the defendant Marshall's version of the facts, the failure to complete the corporate organization was due to mere oversight. His version, however, is refuted by the attorney who prepared the articles of association, who testified that all of the requisite steps to transform the partnership to a corporate entity were carefully and explicitly outlined to the parties as partners in the old firm and as subscribers to the proposed new corporation. And in 1968 the defendant was advised by other counsel that the legal deficiencies in the corporate organization were a serious matter as far as creditors were concerned.

■ The findings make it clear that the chancellor's ruling, which denied the plaintiff any access to the equity court, was based on estoppel. And certainly it is the general rule of this, and other jurisdictions, that the members of a pretended corporation, who have been active as its officers and directors are estopped from denying the corporate existence of the enterprise to anyone who has dealt, to his detriment, with the business as a corporation. *Corey & Co.* v. *Morrill*, 61 Vt. 598, 605, 17 A. 840 (1889); 18 Am.Jur.2d, *Corporations* § 79; 18 C.J.S. *Corporations* § 110(b).

■■ Estoppel is the creature of the equity courts and is applied to achieve an equitable result. To estop the plaintiff, it is essential for the defendant to establish that he relied on the plaintiff's conduct in the corporation to his prejudice. *Watkins' Estate* v. *Howard National Bank*, 113 Vt. 126, 137, 30 A.2d 305 (1943), *cert. denied*, 319 U.S. 758. 87 L.Ed. 1710 (1943). *West River Power Co.* v. *Bussino*, 111 Vt. 137, 139, 11 A.2d 263 (1940). The doctrine does not apply when the true facts are known or equally available to both parties. *Watkins' Estate* v. *Howard National Bank, supra*, 113 Vt. at 138; *Executors of Judevine's Estate* v. *Trustees of Caledonia County Grammar School*, 93 Vt. 220, 238, 106 A. 836 (1919). Here there is no finding that the defendant has been harmed by the

plaintiff's conduct. Quite the contrary, the business has prospered, despite the fact that the corporation was never legally organized.

 This appeal does not concern the rights of outsiders. It relates exclusively to the interests of three partners who contemplated the conversion of a partnership business to a corporate enterprise. Failing in that, they became personally liable to the outside world as in the manner of partners. 11 V.S.A. § 269; *Kings Feature Syndicate* v. *Courrier*, 241 Ia. 870, 41 A.L.R.2d 467, 471 (1950), and Annot. 41 A.L.R.2d 477 (1955); 18 Am.Jur.2d, *Corporations* § 56; 18 C.J.S. *Corporations* § 132. There is no sound reason why they should not be personally liable to their business associates, as they agreed to in their partnership agreements. The doctrine of estoppel will not operate to obstruct the settlement of their mutual interests, rights and obligations among themselves. *Smith* v. *Schoodoc Pond Packing Co.*, 109 Me. 555, 84 Atl. 268, 269 (1912).

 "(T)here is no particular divinity surrounding the term 'corporation.' The Courts will look through the form to get at the real intent of the association of individuals or corporations forming the organization, and, if rights of third parties have not intervened, will give effect to the real purpose of the organization in order to promote square dealing and effectuate justice." *Wabash Railway Co.* v. *American Refrigerator Transit Co.*, 7 F.2d 335, 344 (8th Cir. 1925), *cert. denied*, 270 U.S. 643 (1926). The same concept prevailed in *Fortugno* v. *Hudson Manure Co.*, 51 N.J. Super. 482, 144 A.2d 207, 217 (1958), and *Gossett* v. *Schabelitz*, 74 Cal. App.2d 854, 169 P.2d 684, 688 (Dist. Ct. App. 1946).

The interests and obligations of these parties originated in their partnership agreements. The second agreement of 1956, unlike the first, has not been terminated by a cessation of business certificate under 11 V.S.A. § 1628. The affairs of Marshall-Bradley Co. have never been concluded. See *Stoddard & Sons* v. *Village of North Troy*, 102 Vt. 462, 472, 150 A. 148 (1930).

 "That the relationship between partners is highly fiduciary in character is beyond question. And this character of

the relationship continues until the affairs of the partnership are fully settled and closed. The partners stand as trustees for each other." (Citations omitted). *Lyon* v. *Prescott*, 103 Vt. 442, 446, 156 A. 679 (1931). (Powers, C.J.)

It matters not whether the parties were engaged in the partnership business or participating in a joint venture as promoters. They are bound by equivalent and mutual obligations of good faith and fidelity. *Meinhard* v. *Salmon*, 249 N.Y. 458, 164 N.E. 545, 546 (1928). *Blanchard* v. *Commonwealth Oil Co.*, 294 F.2d 834, 840 (5th Cir. 1961). *Leeds* v. *Townsend*, 228 Ill. 451, 81 N.E. 1069, 1071 (1907). See also 18 Am.Jur.2d, *Corporations* § 135.

Where a voluntary settlement cannot be achieved by reason of partnership discord, the traditional remedy is an action in equity for an accounting. *Spear* v. *Newell*, 13 Vt. 288, 292 (1841), (Collamer, J.). *Whitcomb* v. *Whitcomb*, 85 Vt. 76, 78, 81 A. 97 (1911). The right and remedy are also protected under the Uniform Partnership Act. 11 V.S.A. §§ 1241–1246. This was also the express provision of their partnership agreement. The right was foreclosed by the granting of the defendant's motion to dismiss.

The full force and effect to the court's findings of fact do not support the order which followed. The cause is ramanded for an accounting between the parties as their rights and interest may be established.

*Order reversed and cause remanded.*