**The Union Bank v. Allan F. Jones v. Douglas McLeod, Lauren McLeod and Edward J. Hamilton, Jr. and Peter Glenn Shops, Inc. and Fashion Sports, Inc.**

[411 A.2d 1338]

No. 256-78

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Gibson, Superior Judge, Specially Assigned

Opinion Filed February 5, 1980

*Edward B. French, Jr.,* Office of *David B. Stackpole,* Stowe, for Plaintiff.

*Gary D. McQuesten* of *Richard E. Davis Associates, Inc.,* Barre, for Hamilton and Peter Glenn Shops.

*Ryan & Ryan,* Montpelier, for McLeod.

**Daley, J.** In May 1977, the Union Bank obtained summary judgment against third-party plaintiff Allan Jones (plaintiff), on a $30,000 note dated December 6, 1974. This is a third-party action to determine whether the several third-party defendants (defendants) impleaded by plaintiff are liable to plaintiff for part of the bank's claim against him. See V.R.C.P. 14(a).

The claims in this action arise out of the operation and untimely demise of what was known to the public as the Peter Glenn Ski Shop of Stowe, Vermont (the Stowe shop). Four principal claims were made below, decided by the trial court, and appealed to this Court. First, plaintiff claims that defendants Douglas and Lauren McLeod were partners with him in the Stowe shop, and that the debt represented by the note was a partnership debt. Second, plaintiff claims that defendant Edward J. Hamilton, Jr., personally, or on behalf of defendant Peter Glenn Shops, Inc. (Peter Glenn), was either a partner or joint venturer in, or promoter of, the Stowe shop, and is therefore liable in part for its obligations. Third, defendants Hamilton and Peter Glenn counterclaim against plaintiff for breach of contract and tortious interference with contractual relations. Finally, defendants McLeod counterclaim against plaintiff for damages caused by plaintiff's alleged misrepresentations relating to the business.

On the first claim, the trial court found that a partnership existed between defendants Douglas and Lauren McLeod, and plaintiff; that the note represented a partnership debt; but that because of plaintiff's fraudulent misrepresentations, the partnership agreement was rescinded and therefore plaintiff was not entitled to indemnification from the McLeods. See 11 V.S.A. § 1331. Second, the court determined that partnership law supplied the appropriate theory of liability under the circumstances, and that neither defendant Hamilton nor defendant Peter Glenn were partners in the Stowe shop. Third, the court found that the counterclaim by Hamilton and Peter Glenn was barred by an accord and satisfaction, and because Hamilton was not a party to any agreement. Finally, with respect to McLeods' counterclaim, the court found that they had failed to carry their burden of proof on the issue of damages. The plaintiff appealed from the orders denying indemnification, and defendants Hamilton and Peter Glenn, and then defendants McLeod, separately cross-appealed from the denial of their respective counterclaims.

Early in 1973, defendants McLeod approached defendant Hamilton, president and chief executive officer of defendant Peter Glenn, and proposed that Peter Glenn grant them a franchise. The McLeods had only $10,000 to invest, which Hamilton did not believe was sufficient. A short time later,

however, Hamilton met the plaintiff, who was well financed and who was then constructing business property to rent in Stowe. After several meetings between the McLeods, Hamilton, and Jones, an agreement was reached, which the court found to consist of the following terms:

1. A Vermont corporation would be formed, to be named Fashion Sports, Inc.
2. Plaintiff would lease the basement, main floor, and one upstairs apartment of his Stowe building, either to Fashion Sports, Inc., or to Peter Glenn for sublease to Fashion Sports, Inc., for a five year period at $500 per month.
3. Plaintiff would pledge his credit to obtain a $30,000 loan for the business; plaintiff would invest $10,000 of his own money and defendants McLeod would invest their $10,000.
4. Plaintiff would own 50% of the stock of Fashion Sports, Inc., and defendants McLeod would together own the other 50% of the stock.
5. Peter Glenn would be a franchisor, and would order and supply the Stowe shop's inventory.

The Stowe shop began operation late in December 1973, and operated continuously until early July 1974. No written lease was ever given to the shop, nor was Fashion Sports, Inc., ever formed or the franchise agreement ever executed. Plaintiff did, however, pledge his credit by signing a note for $30,000 on December 6, 1973, and by signing a renewal note on December 6, 1974. Defendant Douglas McLeod signed the 1973 note as co-maker, but did not sign the 1974 note upon which the bank obtained judgment. The proceeds of the loan were paid by the Stowe shop to Peter Glenn for inventory.

Despite repeated requests by defendants McLeod, plaintiff avoided the subject of his promised $10,000 investment with the stock answer that "we're too good friends to talk about money." Defendants McLeod likewise never invested their $10,000. By May 1974, defendant Hamilton became concerned about this deadlock, and he met with plaintiff in Stowe. A new, tentative arrangement was reached, in which Hamilton would try to find $5,000 to invest, Jones would put up $5,000, and the McLeods would invest their $10,000. Hamilton reported this to

the McLeods, and they believed that the deadlock had been broken.

This tentative arrangement, however, was never consummated. Late in June, the McLeods suddenly found that their credit was cut off by Peter Glenn, allegedly because plaintiff was no longer backing the business. Douglas McLeod telephoned plaintiff, who replied that he wasn't going to invest another nickel. Shortly thereafter, the McLeods determined that they could not continue without plaintiff's support, and they transferred the remaining inventory back to Peter Glenn, and ceased operation.

To resolve this appeal, we address the following key issues:

1. Whether the court's finding of fraud sufficient to effect a rescission of the partnership is supported by the evidence;
2. Whether the court's finding that neither Hamilton nor Peter Glenn Shops, Inc. are liable to plaintiff is correct;
3. Whether the court erred in dismissing the counterclaim of Hamilton and Peter Glenn; and
4. Whether the cross-appeal of defendants McLeod from the court's denial of their counterclaim for damages is properly before us.

### I. *Rescission of the Partnership Agreement*

■ The trial court implied a partnership from the carrying on of the business in accordance with certain agreements, despite the lack of corporate status. This finding is not challenged here, and, indeed, appears sound in light of the copious evidence that plaintiff and the McLeods intended to share net profits and losses. See 11 V.S.A. § 1162(4). It is immaterial to finding a partnership that the parties do not call the business a partnership, or realize that they are partners. *In re Estate of Foreman*, 269 Cal. App. 2d 180, 189, 74 Cal. Rptr. 699, 706 (1969); *Anderson Hay & Grain Co.* v. *Dunn*, 81 N.M. 339, 341, 467 P.2d 5, 7 (1970).

Furthermore, the law is well settled that a court of equity may, upon application of the defrauded party, rescind a partnership agreement for fraud in the inducement. *Oteri* v. *Scalzo*, 145 U.S. 578, 588 (1892); *Maruca* v. *Phillips*, 139 Conn. 79, 83, 90 A.2d 159, 161 (1952). Section 1331 of Title 11, while not expressly authorizing rescission of the partnership agreement

for fraud, assumes that this remedy is available by providing for the rights of the parties after such rescission has been decreed.

The narrow question here, therefore, is whether there is evidence to support the court's conclusion of fraud. We have scrutinized the transcript and exhibits, and find that it is not supported.

An action for fraud and deceit will lie upon an intentional misrepresentation of existing fact, affecting the essence of the transaction, so long as the misrepresentation was false when made and known to be false by the maker, was not open to the defrauded party's knowledge, and was relied on by the defrauded party to his damage. *Fayette* v. *Ford Motor Credit Co.*, 129 Vt. 505, 510, 282 A.2d 840, 843 (1971) ; *Anderson* v. *Knapp*, 126 Vt. 129, 133, 225 A.2d 72, 76 (1966). An action for fraud and deceit will also lie for false promises if these promises can be shown to be essential to a scheme to defraud. *Conover* v. *Baker*, 134 Vt. 466, 469, 365 A.2d 264, 266–67 (1976). As an extension of this rule, we have stated that an intentional misrepresentation of future action may constitute a misrepresentation of existing fact, because insofar as the actor presently intends to act differently in the future, he has misrepresented his present intention. *Fayette* v. *Ford Motor Credit Co.*, *supra*, 129 Vt. at 511, 282 A.2d at 844.

The law, however, recognizes a distinction between the strict elements of an action for fraud and deceit, and the constructively fraudulent misrepresentations, made negligently or innocently, which may provide grounds for a rescission of an agreement in equity. *General Finance Corp.* v. *Keystone Credit Corp.*, 50 F.2d 872, 878 (4th Cir. 1931), *cert. denied*, 284 U.S. 684 (1932) ; *Hudspeth* v. *Zorn*, 292 S.W.2d 271, 275–76 (Mo. 1956) ; *Ultramares Corp.* v. *Touche*, 255 N.Y. 170, 186, 174 N.E. 441, 447, 74 A.L.R. 1139, 1149 (1931) (Cardozo, C.J.). But whenever rescission is sought upon a misrepresentation that is negligent or innocent, mere promises to act in the future cannot constitute the requisite misrepresentation of existing fact that is essential to fraud. *Paiva* v. *Vanech Heights Construction Co.*, 159 Conn. 512, 515, 271 A.2d 69, 71 (1970) ; *Vandeputte* v. *Soderholm*, 298 Minn. 505, 508–09, 216 N.W.2d 144, 147 (1974). The reason is that in the case of a

negligent or innocent future promise, there is no present intention to act contrary to the promise, and therefore there can be no misrepresentation of existing fact.

■ The evidence in this case does not support a conclusion of intentional misrepresentation or of a scheme to defraud. Nor is there evidence of misrepresentation of existing fact. The parties agreed to form a corporation, and plaintiff promised to obtain a loan, give a lease, and invest $10,000. He obtained the loan, and, although he did not give defendants a written lease, he rented the premises to the Stowe shop during its operation at $500 per month. There is no direct evidence that it was plaintiff's sole responsibility to ensure the formation of the corporation, and there is clear evidence that the McLeods knew at all times that no corporation had been formed. Even if plaintiff did promise to form the corporation, there is no evidence that at the time he made this promise he in fact intended not to fulfill it. Similarly, although plaintiff broke his agreement to invest $10,000, and later $5,000, in the business, there is no evidence that he did not intend to make these investments when the promises were made. These breaches may create a right to damages for breach of the partnership agreement, see 11 V.S.A. § 1330(b) (1) (B), or for breach of fiduciary duties, see Bradley v. Marshall, 129 Vt. 635, 640–41, 285 A.2d 745, 749 (1971), but they do not constitute fraud. If every broken promise were to constitute fraud and allow rescission of a partnership or other agreement, the resultant instability would severely impair the conduct of business.

Accordingly, the court's conclusion that the partnership agreement was rescinded for fraud was clearly erroneous. Absent rescission, the court's conclusion that plaintiff is not entitled to be indemnified for the McLeods' one-half of the partnership debt is not legally supportable, and must be reversed.

## II. *Liability of Hamilton and Peter Glenn*

■ Plaintiff claims that the court erred in denying plaintiff recovery against defendants Hamilton and Peter Glenn on the theory that Hamilton and Peter Glenn were partners or joint venturers in the Stowe shop. Under the circumstances of this case, whether Hamilton or Peter Glenn are alleged to

be partners or joint venturers makes no difference. See *Mislosky* v. *Wilhelm*, 130 Vt. 63, 68–69, 286 A.2d 267, 271 (1971). The court concluded that the partnership consisted of plaintiff and defendants McLeod, and it found facts sufficient to support this conclusion, but which would not have supported a conclusion that Hamilton or Peter Glenn were partners. We will infer from any fact found such other fact that is both reasonably inferable from the finding, and necessary to support the judgment. *Barre City Hospital* v. *Town of St. Johnsbury*, 117 Vt. 5, 7, 83 A.2d 600, 603 (1951). In this case, it is reasonable to infer from the finding that the partnership consisted of plaintiff and the McLeods the negative finding that it did not consist of Hamilton or Peter Glenn. In light of the evidence that neither of these two defendants intended to contribute to the equity of the business, or to share in the fortunes of the shop, we cannot say that this finding was clearly erroneous. See 11 V.S.A. § 1162. Furthermore, were we to denominate the business a joint venture, the result is no different: competent evidence supports the conclusion that the Stowe shop was plaintiff's and the McLeods' enterprise, not Hamilton's or Peter Glenn's.

The claim that Hamilton or Peter Glenn should be liable for debts of the Stowe business as promoters of Fashion Sports, Inc., is not legally tenable. A promoter is liable on a contract he makes for the benefit of a proposed corporation, absent an agreement to the contrary. *Herbert* v. *Boardman*, 134 Vt. 78, 86, 349 A.2d 710, 714 (1975). But where, as here, the alleged promoters have not participated in making contracts for the benefit of the proposed corporation, they are not liable. Neither Hamilton nor Peter Glenn signed either note with the Union Bank. As for the inventory contracts, these were made between Peter Glenn as seller and the Stowe shop as buyer. To find the seller liable as a promoter on debts to itself would be absurd. Nor is Hamilton liable as a promoter on these contracts, because there is no evidence that he was the negotiating party on behalf of Fashion Sports for these transactions.

The court's finding that neither Hamilton nor Peter Glenn are liable on the debts of the Stowe shop will be affirmed.

### III. *Accord and Satisfaction*

The error claimed by defendants Hamilton and Peter Glenn is the denial of their counterclaim for breach of contract and tortious interference with contractual relations, based on the court's conclusion of an accord and satisfaction. To the extent that this counterclaim was Hamilton's personally, the court found that Hamilton was not a party to any agreement. This finding is unchallenged here, supported by competent evidence, and we uphold it. Therefore, the narrow question is whether the findings and the evidence support the court's conclusion that "[t]he defendant Peter Glenn Shops, Inc. reached an accord and satisfaction with the partnership composed of plaintiff and defendants McLeod when it released any claims it had against the partnership or partners by taking back the inventory and discharging the debts of the partnership."

■ ■ To constitute an accord and satisfaction, that which is offered must clearly be offered in full satisfaction of the claim in question, and it must be so understood when accepted. *Harrington* v. *Mutual Benefit Health & Accident Association*, 108 Vt. 48, 50, 182 A. 179, 180 (1936); *Drown's Guardian* v. *Chesley's Estate*, 92 Vt. 19, 25, 102 A. 102, 104, 1918A L.R.A. 1056, 1060 (1917). In this case, upon termination of the Stowe business, the McLeods transferred the remaining inventory to Peter Glenn. The evidence is conflicting as to whether this transfer was intended to fully satisfy the Stowe shop's debt to Peter Glenn for inventory, but there is absolutely no evidence to indicate that this transfer was intended, as the court concluded, to release "any claims" Peter Glenn may have had against the Stowe shop or its partners. Because this overbroad conclusion is unsupported by the findings or the evidence, it cannot stand.

### IV. *Cross-Appeal of McLeods*

The McLeods counterclaimed for damages for breach of various promises. The trial court dismissed this counterclaim on the ground that the McLeods failed to sustain their burden of proof on the issue of damages. We cannot review this decision, because the McLeods' untimely notice of cross-appeal fails to vest jurisdiction in this Court. See *State* v. *Savo*, 136 Vt. 330, 330–31, 388 A.2d 391, 392 (1978) (per curiam).

On July 6, 1978, the court disposed of the several third-party claims. This order finally adjudicated all remaining claims in the case. Motions for amendment of findings and for new trial, V.R.C.P. 52(b), 59(a), were filed by Jones on July 17, 1978. They were timely because July 16 was a Sunday, V.R.A.P. 26(a); V.R.C.P. 6(a), and therefore they tolled the appeal period. V.R.A.P. 4. An order denying the motions was made on July 27, 1978, and this commenced the thirty-day appeal period. *Id.*

Appellant Jones' notice of appeal was filed August 17, 1978. Cross-appellants McLeod then had 14 days to file a notice of cross-appeal, which they failed to do. V.R.A.P. 4. There is a thirty-day allowable extension of time to appeal or cross-appeal provided for in the rule, but it is a jurisdictional prerequisite that the extension be sought and obtained within the normal time period plus the extension period allowed by V.R.A.P. 4 (60 days for appeals; 44 days for cross-appeals). *Shortle* v. *Board of Zoning Adjustment,* 136 Vt. 202, 203, 388 A.2d 430, 431 (1978). In this case, the 44-day period expired September 20, 1978, but the extension was not sought until November 30, 1978, and was not granted until September 7, 1979. Therefore, this Court lacks jurisdiction over the cross-appeal of the McLeods because it was not timely filed, and no extension was timely sought and obtained.

The final problem we face is to determine the proper disposition of this appeal. Although there was no application to the trial court for dissolution, see 11 V.S.A. §§ 1323(6), 1324, the court concluded that the partnership was dissolved. We uphold this not as a judicial dissolution under 11 V.S.A. § 1324, but as the court's recognition of the pre-existing fact that the partnership had dissolved by completion of the undertaking for which it was formed. 11 V.S.A. § 1323(1)(A).

Dissolution, however, does not terminate a partnership; there must still be a winding up of the partnership affairs. 11 V.S.A. §§ 1321, 1322. And "[w]here a voluntary settlement cannot be achieved by reason of partnership discord, the traditional remedy is an action in equity for an accounting." *Bradley* v. *Marshall, supra,* 129 Vt. at 641, 285 A.2d at 749; see 11 V.S.A. § 1245.

*Judgment against third-party plaintiff in favor of third-party defendants Douglas and Lauren McLeod reversed. Judgment against third-party plaintiff in favor of third-party defendants Edward J. Hamilton, Jr., and Peter Glenn Shops, Inc., affirmed. Judgment dismissing counterclaim of Edward J. Hamilton, Jr., affirmed. Judgment dismissing counterclaim of Peter Glenn Shops, Inc., reversed. Cross-appeal of third-party defendants Douglas and Lauren McLeod dismissed. Remanded for a hearing on the counterclaim of Peter Glenn Shops, Inc., and for an accounting between third-party plaintiff and third-party defendants Douglas and Lauren McLeod.*