**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Emmanuel ADEBAIKE, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 13, 2004.

Filed March 31, 2004.

Burton A. Rose, Philadelphia, for appellant.

Hugh J. Burns, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: BENDER, BECK and KELLY, JJ.

OPINION BY BENDER, J.:

¶ 1 This is an appeal from judgment of sentence imposed upon Appellant after probation was revoked. Appellant contends that the court erred in sentencing him to consecutive sentences after probation was revoked where his plea agreement called for concurrent sentences. We agree and vacate the judgment of sentence.

¶ 2 On March 8, 2000, Appellant entered a negotiated plea of guilty to attempted theft. The charge stemmed from an attempt on September 17, 1999, to cash a check on Temple University's account at First Union Bank. A bank cashier suspected the check was not genuine and a call to the police was made. No payment was made on the check and it was later determined to be counterfeit.

¶ 3 On March 17, 2000, Appellant again pled guilty pursuant to a negotiated plea agreement to a charge of theft. That charge related to the cashing, on September 16, 1999, of a counterfeit Temple University check in the amount of $1,624.61. Appellant waived a pre-sentence investigation and proceeded directly to sentencing on both charges. Appellant was given three years reporting probation on the charge he pled guilty to on March 8th. Appellant received an additional sentence of three years reporting probation on the charge he pled guilty to that day, concurrent with the sentence imposed on the first charge.

¶ 4 On July 25, 2001, while on probation on the instant charges, Appellant pled guilty to a charge of criminal conspiracy relating to an attempt to cash a forged check through an accomplice in Delaware County. The date of that offense was January 26, 2001, approximately ten months after entering the guilty pleas of the present case.

¶ 5 Precipitated by the entry of the plea in Delaware County, a violation of probation hearing was held on November 14, 2001, at which time Appellant's probation was revoked and a sentence of six to twenty-three months' imprisonment was imposed on each charge, to run concurrently. The court also allowed Appellant to sur-

render thirty days later to assist Appellant in setting up work release.

¶ 6 When Appellant reported on December 13, 2001, to begin serving his sentence, the Assistant District Attorney assigned to the case, M.K. Feeney, Esquire, asked the court to reconsider the sentence imposed a month earlier asserting that Appellant had "lied" to the court on at least five occasions. After argument on the matter, the court imposed a new sentence of eighteen to thirty-six months' imprisonment on each charge, to be served consecutively. On December 20, 2001, Appellant filed a motion for reconsideration of sentence asserting that the imposition of consecutive sentences violated the rule enunciated in *Commonwealth v. Anderson*, 434 Pa.Super. 309, 643 A.2d 109 (1994). After conducting two hearings/arguments on the matter, Appellant's motion for reconsideration was denied at the conclusion of the second hearing on March 6, 2002.

¶ 7 Appellant filed an appeal on April 2, 2002, within thirty days of the denial of his motion to reconsider. However, the appeal was quashed as untimely pursuant to the decision in *Commonwealth v. Coleman*, 721 A.2d 798 (Pa.Super.1998), which holds that Pa.R.Crim.P. 720, relating to the time for taking an appeal when post-sentence motions are filed, does not apply to sentences imposed upon revocation of probation. Thus, appeals from a sentence imposed upon probation revocation must be taken within thirty days of imposition. Appellant filed a PCRA petition on December 13, 2002, seeking reinstatement of his direct appeal rights. Appellant's PCRA petition was granted, leading to the taking of the present appeal on April 23, 2003.

¶ 8· Appellant, relying upon the afore-cited *Anderson* decision, asserts that the court was not empowered to impose consecutive sentences upon revocation of probation since pursuant to the original plea agreement he was to receive a concurrent sentence. Although we will not capsulize the *Anderson* holding here in detail, as it is readily available for review, we will quote the panel's conclusion:

> We conclude that where a court accepts a guilty plea made pursuant to a negotiated plea bargain for a sentence concurrent with a prior sentence and imposes a concurrent sentence in compliance with the terms of the plea bargain, the court has enforced the plea bargain; upon resentencing, following probation revocation, the court remains bound to the plea bargain and must impose concurrent sentences.

*Id.* at 110. As can be seen from the above quote, *Anderson* appears to directly control the present case. Indeed, this point could have been deduced from the attack leveled upon that decision by both the Commonwealth and the trial court; the gist of those attacks boils down to a criticism of the soundness of the *Anderson* decision.[1] The Commonwealth and trial court here are not the only critics of *Anderson* on record. *Anderson* was a two-to-one decision decided over a vigorous dissent authored by our colleague, Judge Johnson. Despite the misgivings of the Commonwealth, the trial court and our colleague Judge Johnson, *Anderson* is binding authority and must be adhered to in the present case.

¶ 9 In attempting to avoid the dictates of *Anderson*, the court first argues that a concurrent sentence was not part of the

---

1. The court states in its opinion, "[f]inally, even if fraud were not a part of this case, the Court at this time would urge the Superior Court to revisit Anderson and overrule it as being in contravention to weighty public policy considerations." Trial Court Opinion (T.C.O.), 7/01/03. at 15.

plea agreement's bargained for exchange. However, the court admits that the exact terms of the plea agreement are unknown due to deficiencies in the record. T.C.O. at 9. Notably, the Commonwealth does not contest the assertion that a concurrent term was a pàrt of the bargained for exchange. Moreover, the record suggests the contrary. During the plea proceeding, the court outlines the understanding of Appellant and the Commonwealth vis-à-vis the plea agreement. The court states:

> The court: And, as in that case, three years reporting probation is being recommended as a sentence for those two, **and they will run concurrently.** Is that your understanding?

N.T. Guilty Plea, 3/17/01, at 3, (emphasis added). Appellant replied "yes" to this question. Thus, the understanding of the parties was that Appellant, like the appellant in *Anderson*, would receive a concurrent sentence. Consequently, we believe that we cannot avoid *Anderson* on this basis.

¶ 10 The court next asserts that *Anderson* should not apply because the original sentence was procured through fraud. However, a review of the record clearly establishes that what the court considers fraud amounts to nothing more than a broken promise made by Appellant at sentencing that "nothing like this would ever happen again." T.C.O. at 16.

¶ 11 First, we note that the issue in the present case involves the court's power to impose consecutive sentences upon revocation as opposed to the concurrent sentences imposed initially. In this regard,

the supposed fraud relates to events occurring after entry of the plea. Neither the Commonwealth, nor the trial court, point to any misrepresentations that were made in the plea negotiation process that induced the Commonwealth to enter a plea agreement of concurrent sentences that it would not have otherwise entered, or induced the court to approve a plea agreement it otherwise would not have. As such, the plea agreement, and the concurrent terms that came with it, cannot be deemed to have been fraudulently entered. To the extent the entry of a term of probation was imposed instead of incarceration, and to the extent the· court was induced to impose probation upon assertions of Appellant that "nothing like this would happen again," made during allocution, this circumstance will be addressed through the revocation of probation.[2]

¶ 12 Nevertheless, turning to the assertions viewed by the court as misrepresentations supporting a finding of fraud, while Appellant's failure to live up to his promise to live a law abiding life upon being extended a probationary sentence might be disappointing to the court, it does not constitute fraud. Fraud is defined in Black's Law Dictionary as: "a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment." *See* Black's Law Dictionary 670 (7th ed.1999). If such a broken promise constituted fraud, breaches of contract would, in effect, amount to frauds. This is simply not the law.[3] As the definition above bears

---

2. In any event, revocation of probation would appear to be the "remedy" for fraudulent inducement of a probationary sentence. *Commonwealth v. Meyer*, 169 Pa.Super. 40, 82 A.2d 298 (1951).

3. In *Commonwealth v. Meyer*, 169 Pa.Super. 40, 82 A.2d 298, 301 (1951), we stated, "[o]f

course, a promise to do something in the future in itself does not constitute fraud but fraud may be predicated on the non-performance of a promise made as a device to accomplish the fraud." Under the facts here, if Appellant were found to have committed a fraud upon the court because he engaged in criminal conduct after gaining a probationary

out, fraud requires an intentional misrepresentation of fact with the intent to induce a detriment in reliance upon the misrepresentation. Here, the fact Appellant is alleged to have misrepresented related to future events.

¶ 13 Additionally, the other assertions attributed to Appellant and viewed as "lies" would not constitute fraud with respect to the entry of the initial plea or sentence. The court points out four "lies" of Appellant. The first was that Appellant had lost his job on November 30, 2001, due to trust issues, namely, that he had filled out a job application and indicated that he had no convictions. Discussion of the matter at the hearing reveals that in addition to failing to disclose his convictions, the "trust issues" revolved around the fact that Appellant made personal calls while pretending that they were work calls and disappeared from his desk for lengthy periods of time. N.T. Resentencing, 12/13/01, at 8–9. Assuming that Appellant in fact made such a representation on a job application, doing so would not represent a lie to the court. Moreover, it post-dated the entry of Appellant's plea and the imposition of the original sentence. As such, it

cannot constitute a misrepresentation that induced the Commonwealth to enter into a plea or one that induced the court to accept the plea and impose a probationary sentence.[4]

¶ 14 The other alleged lies relate to representations or characterizations made by counsel during the revocation hearing as to the case that resulted in revocation of probation in the present case. In our opinion, these amount to quibbling over details of the other case. They are not material.[5] Moreover, as above, they post-date the entry of the plea agreement and the imposition of the original sentence and had no affect on the Commonwealth's entry into the initial plea or the imposition of the original sentence.

¶ 15 Lastly, the court cites allegations contained in a Secret Service report that Appellant was the "mastermind" in a forgery ring. First, there is no indication that the allegations had yet been proven in a court of law. As such, they are merely allegations of criminal conduct. Secondly, there is no indication that the alleged criminal activity pre-dated the entry of the plea

---

sentence, anyone who ever violated his probation would be deemed guilty of fraud. In another context, the Supreme Court of Vermont has stated:

> If every broken promise were to constitute fraud and allow rescission of a partnership or other agreement, the resultant instability would severely impair the conduct of business.

*Union Bank v. Jones,* 138 Vt. 115, 122, 411 A.2d 1338, 1343 (1980).

4. The Commonwealth, if not the court, appears to have been further bothered by Appellant's requesting work release upon learning that Appellant had been discharged from his job. However, the proceeding in which Appellant requested work release pre-dated his termination from employment due to "trust issues." After imposing a term of incarceration on November 14, 2001, the court allowed

Appellant thirty days before surrendering so that he could set up work release. As the court acknowledges in its opinion, Appellant was terminated "as of 11/30/01." T.C.O. at 6. In characterizing Appellant as a liar, the Commonwealth pointed to the fact that Appellant had indicated he worked for Glaxo Smithkline. The ADA contended that she called Glaxo and was told they had never heard of Appellant. As it turns out, Appellant was employed by a temporary staffing agency and had been assigned to a job at Glaxo. N.T., 12/13/01, at 4–7.

5. The exchange regarding Appellant's assertion that he worked for Glaxo instead of for a temp agency assigned to Glaxo is indicative of the "misrepresentations" attributed to Appellant and were cited for support of voiding the sentence. We believe many people would regard this as "nitpicking."

in the instant case. Again, at most these allegations indicate that Appellant broke his promise to the court to stay out of trouble, and again, that promise was made to the court after the plea was entered and could not have affected the acceptance of a term of concurrent sentences. In short, the record does not support that a fraud had been perpetrated on the court, a promise broken, yes, a fraud, no.

¶ 16 The gist of the situation is that the court apparently feels betrayed by Appellant's breaking his promise to the court to stay out of trouble. This is understandable, and the court is justified in revoking Appellant's probation both because, as the court itself points out, by committing another crime while on probation Appellant has demonstrated that he is a poor probation risk and also to vindicate the court's authority.[6] However, the reaction in the present case appears unnecessary. In essence, the court vindicates its authority by revoking probation, which is essentially a somewhat conditional, yet not usually onerous, freedom, and imposing confinement, *i.e.,* incarceration. It is not necessary in order to vindicate the court's authority to impose a relatively harsh sentence. Moreover, it is important to remember that upon revocation, Appellant is being sentenced on the original crimes, not upon any crimes or bad behavior that occurred since. While the Appellant's actions on probation may be relevant to determining an appropriate sentence for the original offenses, the punishment still relates to the original offense and should be proportional to that wrong. If the events that precipitated the revocation are themselves crimes, Appellant will be subject to addi-

tional punishment for those offenses.[7] To unduly focus upon the additional offenses in imposing a sentence upon revocation will result in a sentence that, in effect, punishes Appellant twice for those subsequent offenses.

¶ 17 Judgment of sentence vacated, case remanded for resentencing. Jurisdiction relinquished.

---

**6.** 42 Pa.C.S. § 9771 states: "[t]he court shall not impose a sentence of total confinement upon revocation unless it finds that: … (3) such a sentence is essential to vindicate the authority of the court."

**7.** Additionally, under the guidelines, Appellant's prior criminal behavior will be factored into the guideline ranges through a higher prior record score.